Argued and submitted September 5, 2002, judgment of conviction and sentence of
death affirmed April 10, reconsideration denied July 1, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# BILLY LEE OATNEY, JR.,
*Appellant.*

# (C973456CR; SC S45850)

66 P3d 475

Eric Johansen, Deputy Public Defender, Salem, argued the cause and filed the brief for appellant. With him on the brief was David E. Groom, State Public Defender.

Janet Klapstein, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With her

on the brief were Erika L. Hadlock, Assistant Attorney General, Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

BALMER, J.

Durham, J., dissented and filed an opinion.

---

* Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case.

### BALMER, J.

This case is before us on automatic and direct review of defendant's convictions for eight counts of aggravated murder and sentence of death. Defendant challenges trial court rulings in the pretrial, guilt, and penalty phases of his trial, seeking reversal of his convictions or, in the alternative, vacation of his sentence of death and remand for resentencing. For the reasons set out below, we affirm the convictions for aggravated murder and the sentence of death.

## I. FACTS

Because the jury found defendant guilty, we review the evidence in the light most favorable to the state. *State v. Thompson*, 328 Or 248, 250, 971 P2d 879 (1999).

The victim disappeared on August 27, 1996. Her family told police that defendant might have information about her whereabouts because the victim had been planning to meet with defendant to ask him to make some jewelry for her upcoming wedding. On September 2, 1996, the Tualatin police interviewed defendant, who stated that he had not seen the victim for three weeks. Later that evening, a Milwaukie police officer, who had no knowledge of the Tualatin police's questioning of defendant regarding the victim's disappearance, stopped defendant because the license plate light on his van was not working. Defendant's license check revealed no reason to detain him, but the police determined that defendant's passenger, Johnston, had an outstanding warrant for his arrest for a parole violation. The police arrested Johnston.

During the traffic stop and investigation of Johnston, one of the police officers saw defendant and Johnston moving a duffel bag inside the van as if to conceal it. The officer asked defendant for consent to look into the bag, and defendant consented. The police found, among other things, a replica of a Colt .45, a stun gun, a dart gun, a large knife, a lock-pick set, a pair of scissors, and a roll of duct tape. The police inventoried the items and returned them to defendant, but did not detain him further.

On September 9, 1996, the victim's badly decomposed body was found in Champoeg Park. In a subsequent interview with defendant, the Tualatin police learned of Johnston's September 2, 1996, arrest. They listened to tapes of Johnston's telephone conversations with defendant from jail and learned that defendant might have been involved in the victim's disappearance.[1] Over the next few weeks, the Tualatin police interviewed defendant several times. They also searched defendant's apartment and found blood matching the victim's blood on the carpet.[2] The Tualatin police continued to keep defendant under surveillance. After obtaining a search warrant, the police searched defendant's van. Among other items, they found the items from the duffel bag that the Milwaukie police had found during the September 2, 1996, stop.

Meanwhile, as a result of the continuing investigation of the victim's death, the state charged Johnston with one count of aggravated murder. Johnston pleaded guilty to aggravated murder, and, in exchange for his cooperation and testimony, the state agreed not to seek the death penalty.

Defendant was ultimately charged with eight counts of aggravated murder. At trial, both defendant and Johnston testified. Johnston testified that, while he was staying with defendant at defendant's apartment, defendant said that he had a date with the victim, left the apartment, and brought the victim back with him later that evening. While Johnston was on the telephone in another room, he heard defendant's stun gun being used. Johnston returned to the living room and saw the victim on the floor with defendant holding his stun gun to her neck. Johnston and defendant then tied up the victim and took her to the bedroom. They cut off her clothes with scissors and both of them raped and sodomized her. After forcing her to give them the personal identification number to her bank card, defendant sent Johnston out to get

---

[1] The police suspected that Johnston and defendant were using a code to discuss plans to dispose of the victim's property. For example, the two men discussed their desire to dispose of "camping stuff" and the possibility of having a "garage sale." Police were familiar with that type of code, which they suspected that defendant and Johnston had learned while in prison together for previous offenses.

[2] Defendant had vacated the premises, and his former landlord had consented to the search.

some money from an ATM using the victim's card. When Johnston returned, he saw that the victim had blood on her face and was not moving. Johnston testified that defendant had told him that defendant had hit and choked the victim because she "just wouldn't [have sex with] me." Defendant said that he had tried to kill her, but "the [victim] just won't die." Defendant and Johnston then held a plastic bag over the victim's head until she stopped breathing.

Defendant argued at trial that Johnston had lied in his testimony to avoid the death penalty. Defendant testified that Johnston had killed the victim while defendant was away from the apartment. According to defendant, he had not learned of the victim's murder until the following day. He testified that he had helped Johnston cover up the murder because he had been afraid of being implicated in the murder because it had occurred in his apartment.

The jury convicted defendant of all eight counts of aggravated murder. In a separate sentencing proceeding, the jury determined that defendant had acted deliberately, that defendant posed a continuing risk to society, and that defendant should receive a death sentence. The trial judge then entered a sentence of death. After defendant's conviction, the court sentenced Johnston to life without the possibility of parole.

Defendant now raises 43 assignments of error. We have examined each of those assignments of error, and we reject each one. Three of the assignments of error merit discussion, and we now turn to them.

## II. GUILT-PHASE JURY INSTRUCTIONS

### A. *Preliminary Discussion*

Defendant assigns as error the trial court's "accomplice-witness" instructions and, in particular, the instruction that stated that, "as a matter of law," Johnston was "an accomplice witness in the commission of the crimes charged in this indictment."[3] The trial judge gave the jury the following accomplice-witness instructions:

---

[3] Defendant's objection is to a group of three instructions to which we refer, collectively, as the "accomplice-witness" instructions.

"You are instructed that as a matter of law, Willford Nathaniel Johnston, III, is an accomplice witness in the commission of the crimes charged in this indictment." (The accomplice-witness-as-a-matter-of-law instruction.)

"You should view an accomplice witness's testimony with distrust." (The credibility instruction.)

"The testimony of an accomplice in and of itself is not sufficient to support a conviction. There must be, in addition, some other evidence, however slight or circumstantial, other than the testimony of an accomplice that tends to connect the defendant with the commission of the crime. This other evidence or corroboration need not be sufficient by itself to support a conviction, but it must tend to show something more than just that a crime was committed. It must also connect or tend to connect the defendant with the commission of the crime." (The corroboration instruction.)[4]

As noted, at trial, Johnston had testified that he and defendant had committed the crimes together. Defendant testified that Johnston had committed the crimes alone, admitting his own culpability only as to helping to dispose of some of the victim's property, cleaning up his apartment to remove evidence of the victim's murder, and related conduct after the victim had been killed. Defendant first argues that, when the trial court instructed the jury that Johnston was an accomplice witness "as a matter of law," the trial court, in effect, directed a verdict of guilty by instructing the jury that defendant had committed the crimes along with Johnston. Second, defendant argues that, even if that instruction did not amount to a directed verdict of guilty, "the trial court effectively instructed the jury that the crime was in fact committed," thus depriving defendant of his right to a jury trial on each element of the offenses. Third, defendant argues that the accomplice-witness instructions invaded the factfinding role of the jury by improperly undermining his assertion that Johnston alone had killed the victim. Defendant contends that it is reversible error for a trial court to give the accomplice-witness instructions unless a defendant requests them.

---

[4] Those instructions were based on the Uniform Criminal Jury Instructions currently numbered as 1057(2), 1056, and 1055, respectively.

As authority for his arguments, defendant relies on *State v. Simson*, 308 Or 102, 775 P2d 837 (1989), in which a criminal defendant objected to similar accomplice-witness instructions. In that case, three men had been convicted of the theft of a truck that the defendant drove for his employer. The defendant also had been charged with the theft, but the trial testimony of the three convicted witnesses did not implicate the defendant, contrary to the prosecution's expectation. Over the defendant's objection, the trial court gave the accomplice-witness instructions, including the accomplice-witness-as-a-matter-of-law instruction, to the jury. This court reversed the resulting conviction on the ground that the instructions were "inappropriate to give" under the circumstances:

> "By instructing the jury that the witnesses were accomplices in the crime as a matter of law, the trial court effectively instructed the jury that the crime was in fact committed. This deprived defendant of his right to a jury trial on all elements of the charge. Normally, the accomplice-as-a-matter-of-law instruction presents no problem, because the instruction is requested by the defendant. A defendant will risk the implication that a crime was committed in order to cast doubt on the veracity of his accusers. But, in this case, it could serve to cast doubt only on the veracity of those whose testimony favored him. Defendant received no trade-off."

*Id.* at 109-10.[5] The court also noted:

> "We think that, as a general rule, these instructions ought not to be given unless requested by the defendant."

*Id.* at 110 n 10. Defendant points to that "general rule," arguing that the trial court should have followed it in his case. When the trial court gave the accomplice-witness instructions over defendant's objection, defendant contends, the trial court committed reversible error in the three respects described above.

---

[5] *Simson* referred to the instruction at issue in that case as the "accomplice-as-a-matter-of-law" instruction. We note, however, that the instruction at issue in that case was the same as the one at issue here, which we refer to as the "accomplice-witness-as-a-matter-of-law" instruction. *See Simson*, 308 Or at 105 n 1 (quoting accomplice-witness instruction).

Before addressing defendant's arguments, it is helpful to discuss the reason for giving the accomplice-witness-as-a-matter-of-law instruction and the appropriate situations in which to give it. The testimony of accomplices long has been viewed with suspicion, both because of concern about the veracity of a witness who, by his or her own admission, has committed a crime, and because of concern that an accomplice might be induced to testify falsely against the person with whom he or she committed the crime by promises of leniency or immunity.[6] Those concerns are the basis for the statutory requirement, now contained in ORS 136.440,[7] that a defendant cannot be convicted solely on the testimony of an accomplice witness; rather, other evidence must corroborate the accomplice witness's testimony. ORS 10.095(4)[8] sets out the additional rule that a court should instruct a jury that it should view with distrust the testimony of an accomplice. To implement those statutory requirements, a trial court instructs the jury that it should view an accomplice's testimony with distrust and that it cannot convict on the basis of accomplice testimony alone.

■ To make the credibility and corroboration instructions meaningful, a trial court ordinarily also instructs a jury regarding who is an accomplice witness, so that the jury will understand whose testimony is to be viewed with distrust

---

[6] The origins of the common-law rules and the statutes regarding the testimony of accomplice witnesses and the early Oregon cases are discussed in Note, 17 Or L Rev 118 (1938).

[7] ORS 136.440 provides:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165 * * *."

[8] ORS 10.095 provides, in part:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"* * * * *

"(4) That the testimony of an accomplice ought to be viewed with distrust."

and must be corroborated in order to convict a defendant. Subsection (2) of ORS 136.440 provides that an "accomplice" is "a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165."[9] ORS 161.155 provides that one who solicits, commands, aids, or abets another person in the commission of a crime is criminally liable for the acts of that person. Under those definitions, there can be no "accomplice" unless another person has committed a crime. As this court stated in *State v. Hull*, 286 Or 511, 516, 595 P2d 1240 (1979), a person is an "accomplice" for purposes of the corroboration requirement if "the evidence is legally sufficient to justify an indictment of or information against a witness as an accomplice to the offense charged against the defendant, not necessarily to convict the witness of it."

■■ Having discussed the statutory grounds for credibility and corroboration instructions and the definition of "accomplice" for purposes of determining when such instructions should be given, we next consider the appropriate roles of the judge and jury in deciding whether a witness is an accomplice witness. If there is no dispute regarding whether a witness is an accomplice witness—that is, sufficient evidence exists to charge, but not necessarily to convict, the witness of the crimes with which the defendant is charged—then the trial court may determine, as a matter of law, that the witness is an accomplice. *Hull*, 286 Or at 517.[10] If, however,

---

[9] ORS 161.165 relates to victims of crimes and persons whose conduct is necessarily incidental to crimes and, thus, is inapplicable to the issue discussed here. ORS 161.155 provides, in part:

"A person is criminally liable for the conduct of another person constituting a crime if:

"* * * * *

"(2) With the intent to promote or facilitate the commission of the crime the person:

"(a) Solicits or commands such other person to commit the crime; or

"(b) Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c) Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

[10] Of course, if the trial court determines, as a matter of law, that a witness is *not* an accomplice, then the defendant may be convicted solely on the basis of the

the facts regarding whether a witness is an accomplice are in dispute, then the jury decides, and the *defendant* must prove that the witness is an accomplice in order to require corroboration. *Id.* at 515 (citing *State v. Wong Si Sam*, 63 Or 266, 127 P 683 (1912)).[11]

### B. Defendant's "Directed Verdict" Argument

■ Turning to defendant's arguments, we first address his argument that the trial court directed, in effect, a verdict of guilty. According to the state, *Simson* expressly rejected the same argument that defendant makes here. We agree. In *Simson*, this court rejected the defendant's argument that the accomplice-witness-as-a-matter-of-law instruction amounted to a directed verdict:

> "We believe that the jury would understand that the determination of defendant's guilt was its to make and we doubt that the jury would have understood the instruction to be an order to find the defendant guilty, given the instructions as a whole. *See generally State v. Hull*[, 286 Or 511]."

*Simson*, 308 Or at 109. *See also State v. Gibson*, 252 Or 241, 244, 448 P2d 534 (1968) (erroneous instruction that witness was defendant's accomplice, in context in which it was given, did not amount to directed verdict that defendant was guilty).

That reasoning applies here as well. Viewing the instructions as a whole, it is apparent that the trial judge did not instruct the jury that it should find that defendant had committed the crimes. The trial court instructed the jury as to the elements of each crime alleged in the indictment and the relevant definitions of legal terms. It instructed the jury that the state had the burden of proving all elements of the

---

testimony of that witness, and none of the accomplice-witness instructions should be given. A number of this court's accomplice-witness cases involve the defendant's assertion that the trial court erred in concluding that a witness was *not* an accomplice, thus allowing the defendant to be convicted even in the absence of corroborating evidence. *See, e.g., State v. Coffey*, 157 Or 457, 463-76, 72 P2d 35 (1937) (rejecting defendant's claim that witness was accomplice and that conviction based on witness's uncorroborated testimony should be reversed).

[11] The reason for placing that burden on the defendant is obvious: If the witness is an accomplice, then the defendant receives the benefit of the statutory requirement that the state present evidence that corroborates the testimony of the accomplice, as well as the benefit of the credibility instruction.

crimes; that the jury was not to take out of context or place undue emphasis on any one instruction; that, as to each count, the jury could find defendant guilty of the offense charged, guilty of a lesser-included offense, or not guilty; and that defendant was innocent until proven guilty beyond a reasonable doubt. It went on to tell the jury, "You have the sole responsibility to determine what testimony or portions of testimony you will or will not rely upon in reaching your verdict." No reasonable juror could have understood the accomplice-witness instructions to mean that the jury was required to find that defendant was guilty.

Defendant's reliance on *Simson* is misplaced for a more fundamental reason: The "accomplice" testimony in that case exculpated, rather than incriminated, the defendant. The accomplice-witness instructions in *Simson*, in other words, were erroneous because they directed the jury to view with distrust testimony that was *favorable* to the defendant, *i.e.*, that the defendant was *not* involved in the crimes alleged in the indictment. "Instructing the jury that they cannot convict defendant upon uncorroborated accomplice testimony makes no sense when the 'accomplice' testimony itself does not implicate defendant in the crime." *Simson*, 308 Or at 109. Thus, in *Simson*, the accomplice-witness instructions were both legally inapplicable and harmful to the defendant.[12] Here, in contrast, Johnston's testimony directly implicated defendant.

For the foregoing reasons, we hold that the accomplice-witness-as-a-matter-of-law instruction did not amount to a directed verdict of guilty in defendant's case.

C. *Defendant's Argument That the Instruction Told the Jury That a Crime Had Been Committed*

■    Defendant's second argument—that the accomplice-witness-as-a-matter-of-law instruction "effectively instructed the jury that the crime was in fact committed"—is based on this court's holding in *Simson* that the instruction

---

[12] We note that *Simson* appears to be the only case in which an Oregon court ever has reversed a conviction because the trial court erroneously gave an accomplice-witness-as-a-matter-of-law instruction. *Simson* involved the situation—not present in this case—of testimony of an alleged accomplice of the defendant that was introduced by the prosecution, but was highly favorable to the defendant.

deprived the defendant in that case of his right to a jury trial on each element alleged in the indictment. The state argues that *Simson* is distinguishable because, here, defendant's own testimony, while denying responsibility for the crimes, confirmed that the crimes had occurred. Thus, according to the state, because defendant concedes that a crime was in fact committed, the instruction did not improperly deprive defendant of his right to a jury trial on that issue.

We agree. In a criminal prosecution, the state has the burden of proving beyond a reasonable doubt all elements of a charged offense, including the fact that the offense was committed. In *Simson*, this court held that giving the accomplice-witness instructions over the defendant's objection was error because the instructions "effectively instructed the jury that the crime was in fact committed," thus "depriv[ing] defendant of his right to a jury trial on all elements of the charge." 308 Or at 109-10. Here, in contrast, defendant testified that Johnston had told him that Johnston had killed the victim. Defendant also admitted in his testimony that the victim had been killed in his apartment and that he had aided Johnston in cleaning up the apartment and destroying evidence, disposing of the victim's property, and returning her vehicle to her apartment. Because defendant testified that those crimes had occurred, he admitted that the crimes had been committed before the court gave any instructions to the jury. In those circumstances, unlike in *Simson*, that element of the crime was not a matter of dispute, and the accomplice-witness instructions did not improperly instruct the jury that the crimes had been committed.

### D. Defendant's Argument That the Instruction Undermined His Defense

Defendant's third argument is that, even if the accomplice-witness instructions did not amount to a directed verdict, by instructing the jury that Johnston was an "accomplice witness as a matter of law," the trial court, in effect, told the jury that Johnston had solicited, commanded, aided, or abetted *someone* in the commission of aggravated murder, and the only other possible participant, based on the evidence at trial, was defendant. Defendant's theory of the case, however, was that Johnston had committed the crimes *alone*.

According to defendant, the trial court's accomplice-witness-as-a-matter-of-law instruction was, therefore, error, because it undermined that theory.

Several of this court's cases discuss the circumstances in which it may be error to instruct the jury that a witness is an "accomplice" or an "accomplice witness" as a matter of law, and we now turn to those cases. As noted above, in *Simson*, this court held that, based on the facts of that case, it was error to give accomplice-witness instructions, including the accomplice-witness-as-a-matter-of-law instruction, and stated in a footnote the "general rule" that accomplice-witness instructions should not be given unless requested by a defendant. 308 Or at 110 n 10. In *Simson*, however, as discussed above, the instruction was error because it cast doubt on witnesses whose testimony favored the defendant. This court held "that the cautionary accomplice-witness instructions should only be given when the 'accomplice' testimony implicates the defendant." 308 Or at 104. Here, of course, Johnston's testimony directly implicated defendant, and thus *Simson* does not support defendant's claim of error.

■ In *Hull*, this court discussed the respective roles of the judge and jury in determining whether a witness is an accomplice witness whose testimony must be corroborated. As noted above, the standard set out in *Hull* is not whether there is sufficient evidence to convict the witness of being an accomplice of the defendant, but "whether there is probable cause to *charge* the witness with the offense for which [the] defendant is on trial[.]" 286 Or at 516 (emphasis added). Here, of course, Johnston already had pleaded guilty to the murder for which defendant had been charged. More significantly, Johnston testified that he and defendant had committed the crimes together. The trial court did not have to determine that Johnston and defendant had acted together; it had only to conclude that there was *probable cause*—based on Johnston's testimony—that they did act together. As this court stated in *Hull*, "if no facts bearing on the elements needed to charge the witness are in dispute, the issue of the *potential* liability of the witness under ORS 161.155 is a question of law to be decided by the court." 286 Or at 517 (emphasis added). Here, sufficient evidence existed for the trial court

to determine, as a matter of law, that Johnston was an accomplice witness, and that determination by the trial court was consistent with *Hull*.

In *State v. Gibson*, 252 Or 241, 448 P2d 534 (1969), this court held that the trial court had erred in instructing the jury that a witness was an "accomplice as a matter of law," but that the error was harmless. The defendant in *Gibson* was convicted of robbery by force and violence. The state alleged that the defendant and an accomplice, Wright, had followed the victim out of a bar and beaten and robbed him. The defendant admitted participating in the beating, but denied participating in the robbery. Before the defendant's trial, Wright was convicted of both the beating and the robbery. The trial judge, after instructing the jury that the testimony of an accomplice was to be viewed with distrust, stated that, "as a matter of law, I instruct you in this case that Larry Wright is an accomplice of the defendant Monte Gibson." 252 Or at 243-44. This court held that "[s]uch an explicit instruction would be erroneous in a criminal trial, no matter how overwhelming the evidence of guilt might be[,]" *id.* at 244, but went on to conclude that the error was harmless.

In this case, however, the characteristics that made the instruction in *Gibson* erroneous are not present. In contrast to the explicit instruction that Wright was "an *accomplice* of *the defendant Monte Gibson*," the instruction in this case was that Johnston was an "*accomplice witness* in the *commission of the crimes charged in this indictment*." Thus, the instructions here focused on the kind of *witness* Johnston was, for purposes of the corroboration and credibility instructions, rather than on the relationship between Johnston and defendant. Moreover, unlike the *Gibson* instruction, the instruction here did not refer to defendant by name or even as "defendant," but referred to only the crimes alleged in the indictment—crimes to which Johnston had pleaded guilty. The instruction in this case does not suffer from the explicit statement that the witness and the defendant were accomplices in the commission of the crimes that made the *Gibson* instruction erroneous.

■   Having concluded that the instruction here was not error for any of the reasons described in *Simson, Hull,* or *Gibson,* we turn to defendant's argument that the instruction nonetheless improperly intruded on the jury's factfinding role because, by calling Johnston an *"accomplice* witness," the instruction suggested that Johnston was in fact an "accomplice" and, therefore, it implied that defendant was culpable, as well. As noted in our discussion of *Gibson,* the instruction here stated that Johnston was an "accomplice witness" as a matter of law, rather than an "accomplice," and the instruction, unlike the instruction in *Gibson,* did not mention defendant. However, defendant is correct in asserting that the facts regarding whether Johnston acted alone in murdering the victim or acted together with defendant as an "accomplice" were disputed at trial. Because those facts were disputed, defendant argues, the trial court's statement that, as a matter of law, Johnston was an "accomplice witness in the commission of the crimes charged in the indictment" was error, because it told the jury that it must conclude that Johnston and defendant had acted together. For the reasons that follow, we reject defendant's argument.

■   In determining whether it was error to give a particular instruction, the instructions are read as a whole to determine whether they accurately state the law. *State v. Barnes,* 329 Or 327, 334, 986 P2d 1160 (1999). Defendant is correct that the accomplice-witness-as-a-matter-of-law instruction, viewed alone and as an abstract proposition, would allow a juror to conclude, from the description of Johnston's status as an "accomplice witness," that the trial court was stating that another person necessarily had committed the crimes with Johnston.[13] However, the instruction itself was an accurate statement of the law, because Johnston, as noted above, was an accomplice witness as a matter of law. The instruction still might be error if, even when considered with the other instructions, it somehow *required* the jury to accept the

---

[13] The potential mischief that arises from the use of the word "accomplice" in any formulation of the accomplice-witness instructions can be avoided. If the trial court determines that a witness is an accomplice witness as a matter of law, then it may instruct the jury that the testimony of that witness must be viewed with distrust and must be corroborated, without telling the jury that the witness is an "accomplice witness" as a matter of law.

state's theory that Johnston had acted together with defendant, rather than defendant's theory that Johnston had acted alone. The other instructions that the trial court gave, however, made clear that *the jury* was to determine whether the state had proved beyond a reasonable doubt that defendant was guilty of each element of the crimes charged in the indictment. The judge instructed the jury that it was the jury's "sole responsibility to make all the decisions about the facts in this case" and that the jury was to "evaluate the evidence to determine how reliable or how believable the evidence was." In addition to the accomplice-witness instructions at issue here, the trial court gave a number of other instructions as to how the jury should evaluate the testimony of witnesses, including testimony of hearsay statements made by defendant and testimony by witnesses with criminal convictions.

The accomplice-witness-as-a-matter-of-law instruction consisted of less than four lines out of the 40 pages of the trial transcript devoted to instructions and the verdict form. It was followed immediately by the credibility and corroboration instructions. Both literally and in context, the accomplice-witness-as-a-matter-of-law instruction told the jury only that Johnston was the *kind of witness* who was to be viewed with distrust and whose testimony must be corroborated. It did not tell the jury that the jury must conclude that Johnston and defendant had acted together. Moreover, although the jury was given standard instructions on aiding and abetting, it was not instructed on the definition of "accomplice," and it was not required to make any particular decision based on the meaning or application of that term. Finally, and immediately after the accomplice-witness instructions, the trial court instructed the jury that defendant was presumed innocent unless and until proved guilty beyond a reasonable doubt.

Considered as a whole, as they must be, the trial court's instructions fairly apprised the jury of its role in determining whether the state had met its burden of proving that defendant was guilty of the crimes alleged in the indictment. The jury could not reasonably have understood the instructions to remove from its consideration the question whether defendant and Johnston had acted together.

Instead, the jury would have understood, from the instructions as a whole, that, depending upon its evaluation of all the evidence, it could accept defendant's theory that Johnston had acted alone or it could accept the state's theory that Johnston and defendant had acted together.[14] For that reason, the accomplice-witness-as-a-matter-of-law instruction did not improperly undermine defendant's position at trial that Johnston had acted alone.

## III.  SUFFICIENCY OF THE INDICTMENT

■     In two assignments of error, defendant asserts that the trial court did not constitutionally impose a death sentence because the indictment did not allege an offense that made him eligible for the death penalty. Before discussing defendant's argument, it will be helpful first to examine Oregon's death-penalty sentencing scheme. ORS 163.105 provides that a person who is convicted of aggravated murder "shall be sentenced, pursuant to ORS 163.150, to death, life imprisonment without the possibility of release or parole[,] or life imprisonment." ORS 163.150, in turn, specifies the procedures for determining the sentence for a conviction for aggravated murder, including four questions that the jury must answer affirmatively for a person to receive a death sentence. ORS 163.150(1)(b)(A) and ORS 163.150(1)(d) require that, for a death sentence to be imposed, the state must prove and the jury must find beyond a reasonable doubt that the defendant acted "deliberately." If a jury returns a special verdict answering in the affirmative the question of deliberateness and the three other questions set out in ORS 163.150(1)(b)(B) to (D), then the trial court sentences the

---

[14] The dissent asserts that the trial court's instructions "required the jury to accept the court's factual determination * * * that [Johnston] was an accomplice and, consequently, had not acted alone," 335 Or at 303 (Durham, J., dissenting), and "bound the jury to accept that [Johnston] was an 'accomplice' in the crime charged against the defendant." *Id.* at 301. That is incorrect. As discussed in the text, the trial court did not make a "factual determination" that Johnston acted with another person in committing the murder, but only that there was sufficient evidence to charge Johnston as the accomplice of defendant in the commission of the murder. Moreover, the instructions did not bind the jury to accept either the dissent's asserted "factual determination" that Johnston acted with another person or any inference to that effect. For the reasons discussed in the text, the instructions only identified Johnston as the kind of witness whose testimony was to be viewed with distrust and was in need of corroboration.

defendant to death. Under that statutory scheme, a defendant indicted for aggravated murder is on notice that, upon conviction, the death penalty is one of the possible sentences.

Defendant argues that, because he cannot receive a death sentence unless the jury determines that he acted deliberately, deliberateness is an element of the crime of aggravated murder when the state seeks a death sentence. As such, he maintains, it must be pleaded in the indictment and proved beyond a reasonable doubt to a jury.[15] If the state fails to allege that "element" in the indictment, defendant argues, then the trial court cannot properly submit to a jury the question of deliberateness. In this case, the indictment did not allege that defendant's conduct that caused the victim's death had been "committed deliberately." Therefore, according to defendant, the court improperly submitted the question of deliberateness to the jury during the sentencing phase of his trial. It further follows, defendant argues, that he was not eligible to receive the death penalty.

Defendant's argument is based on *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002). As discussed below, this court previously has considered and rejected the interpretation of *Apprendi* that defendant advances here. However, defendant asserts that *Ring* supersedes this court's reading of *Apprendi*. He further argues that *Ring* extends *Apprendi* to support his position that the indictment in this case cannot serve as a basis for a death sentence because it did not allege that defendant's conduct that caused the victim's death had been "committed deliberately."

Defendant relies upon *Apprendi* for the proposition that any fact that increases the maximum penalty for a crime is a functional element of that crime if the state seeks the increased penalty. In *Apprendi*, 530 US at 468, the defendant pled guilty to a "second-degree" offense, which was punishable by five to 10 years in prison. A separate statute extended

---

[15] In defendant's indictment for aggravated murder, counts one through four charged defendant with "personally and intentionally" causing the death of the victim. In counts five through eight, the indictment charged defendant with "unlawfully and intentionally" causing the death of the victim.

the term of imprisonment beyond the statutory maximum if the trial judge found by a preponderance of the evidence that the crime had been motivated by racial animus. *Id.* at 468-69. The Supreme Court held that that "sentencing factor," because it increased the maximum penalty for the crime, had to "be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 490. As a basis for that holding, the Court determined that a state's failure to charge and prove an element necessary to impose an increased punishment violated the Fourteenth Amendment and, with it, a defendant's guarantee of notice and right to a jury trial. *Id.* at 476.

Defendant concedes that this court rejected his argument under *Apprendi*, summarized above, in *State v. Terry*, 333 Or 163, 37 P3d 157 (2001). In *Terry*, this court held that, "[b]ecause a sentence of death is not an enhancement under the aggravated murder scheme, [but instead is one of the statutory penalties for that crime,] the state is not required to allege in the indictment that the murder was committed deliberately." 333 Or at 189. *See also State v. Compton*, 333 Or 274, 296, 39 P3d 833 (2002) (citing *Terry* for that proposition). Defendant argues, however, that the United States Supreme Court in *Ring* expanded the rule announced in *Apprendi*.

Defendant concedes that he did not preserve that argument for review. He argues, however, that the error is "apparent on the face of the record." After the Supreme Court's decision in *Ring*, defendant contends, it is beyond reasonable dispute that, because deliberateness was not charged in the indictment, he was sentenced to death without first being charged with a death-eligible offense. Defendant asks this court, on the basis of *Ring*, to vacate his sentence, reverse the conviction, and remand for entry of a judgment for the crime charged in the indictment, which defendant asserts was aggravated murder not punishable by death.

There is no reason to address the issue whether allowing the jury to decide the unalleged issue of deliberateness is error "apparent on the face of the record" without first determining whether it was error at all. We therefore turn to the merits of defendant's argument.

*Ring* concerned a defendant who had been found guilty of felony murder occurring in the course of an armed robbery; the jury, however, deadlocked on the charge of premeditated murder. Under the applicable sentencing statutes, a person convicted of first-degree murder could not be sentenced to death unless the trial court made additional findings of at least one of certain statutory aggravating factors. Following a sentencing hearing in which new evidence was introduced, including testimony that the defendant had been the person who had shot the victim, the trial court made those additional findings and sentenced the defendant to death. The Arizona Supreme Court affirmed. The United States Supreme Court reversed, holding that the defendant's death sentence violated the Sixth Amendment's jury trial guarantee because the maximum punishment that the defendant could have received based on the jury's verdict was life imprisonment; the judge alone found the aggravating factors that made the defendant eligible for the death penalty. *Ring*, 536 US at 608, 122 S Ct at 2443.

Defendant admits that, under Oregon law, the jury, not the court, determines whether the aggravating factors are present that make an aggravated murder defendant eligible for the death penalty. For that reason, the specific holding in *Ring* that the death sentence violated the defendant's right to a jury trial is inapposite here. Nonetheless, defendant argues that the Supreme Court's determination on a preliminary issue in *Ring* undermines the analysis that this court used in *Terry* to distinguish *Apprendi* and requires that deliberateness be considered an element of aggravated murder punishable by death that must be charged in the indictment.

As noted, in *Terry*, this court rejected the argument that "deliberateness" is an element of capital aggravated murder that must be charged in the indictment. The court distinguished *Apprendi* by noting that the defendant in *Terry* had received a sentence *within* the statutory range of punishments for the crime while, in *Apprendi*, the defendant had been sentenced to a term of imprisonment *greater* than the statutory maximum for the crime. *Terry*, 333 Or at 188-89. In *Ring*, the State of Arizona sought to distinguish *Apprendi*

using a similar analysis. The Supreme Court rejected that argument, stating:

> "This argument overlooks *Apprendi*'s instruction that 'the relevant inquiry is one not of form, but of effect.' In effect, 'the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict.' The Arizona first-degree murder statute 'authorizes a maximum penalty of death only in a formal sense,' for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty. If Arizona prevailed on its opening argument, *Apprendi* would be reduced to a 'meaningless and formalistic' rule of statutory drafting."

*Ring*, 536 US at 604, 122 S Ct at 2440-41 (alterations in original; citations omitted).

Based on that passage from *Ring*, defendant argues that "deliberateness" should have been charged in his indictment because a finding of deliberateness exposed him to a greater punishment than the punishment that could have been imposed based on the guilty verdict alone. Because "deliberateness" was not charged in the indictment, defendant maintains, the question whether defendant acted deliberately was not submitted properly to the jury. Without a proper submission to the jury, he asserts, the jury had no authority to find that he had acted deliberately.

We reject defendant's argument. *Ring* does not require that "deliberateness" be charged specifically in the indictment before the question of deliberateness can be submitted to a jury. The Supreme Court did not discuss in *Ring* the proposition on which defendant now relies, and the Court specifically noted that "[the defendant] does not contend that his indictment was constitutionally defective." *Ring*, 536 US at 597 n 4, 122 S Ct at 2437 n 4. *Ring* addresses the issue of a capital defendant's right to a jury trial on the facts that make the defendant eligible for a death sentence. Under Oregon's sentencing scheme, a jury makes those factual determinations. Defendant admits that, in his case, a jury made the factual determination that he acted deliberately.

In summary, in this case, unlike in *Ring*, the trial court did not impose on defendant any punishment that the jury's answers in the special verdict in the penalty phase did not require. Neither does *Ring* support defendant's argument that the indictment was defective. Contrary to defendant's assertion, *Ring* does not require revision of this court's analysis of *Apprendi* that is set out in *State v. Terry*. Defendant's sentence of death, therefore, does not violate defendant's due process or jury trial rights.

## IV.   CONCLUSION

Based on our review of the three assignments of error discussed above and of each of defendant's other assignments of error not discussed in this opinion, we conclude that there was no reversible error in the guilt or penalty phases of defendant's trial.

The judgment of conviction and sentence of death are affirmed.

**DURHAM, J.,** dissenting.

I dissent from the majority's analysis and conclusion respecting the accomplice-witness instruction that the trial court gave to the jury.

A statute, ORS 10.095(4), requires a trial court, "on all proper occasions," to give an instruction that requires the jury to "view[ ] with distrust" the testimony of an accomplice.[1] ORS 10.095 provides, in part:

"The jury, subject to the control of the court, in the cases specified by statute, are the judges of the effect or value of evidence addressed to them, except when it is thereby declared to be conclusive. They are, however, to be instructed by the court on all proper occasions:

"* * * * *

"(4)   That the testimony of an accomplice ought to be viewed with distrust * * *[.]"

---

[1] As the majority states, ORS 136.440 also prohibits conviction on the uncorroborated testimony of an accomplice. I do not separately analyze the effect of ORS 136.440 on this case.

This court has admonished trial courts to refrain from giving an instruction under ORS 10.095(4) "unless requested by the defendant." *State v. Simson*, 308 Or 102, 110 n 10, 775 P2d 837 (1989). The trial court, in contradiction to the general rule set out in *Simson*, chose to deliver the instruction set out in ORS 10.095(4), despite defendant's objection. The problem here arises because the trial court also chose to convey to the jury an additional factual characterization of the witness—the *identification* of Johnston as an accomplice witness as a matter of law—that ORS 10.095(4) does *not* require. As I discuss below, that instruction interfered with the jury's role as factfinder and undermined the policy embodied in ORS 10.095(4).

In *State v. Gibson*, 252 Or 241, 243-44, 448 P2d 534 (1969), this court recognized the distinction between the statutorily required accomplice-witness instruction and an additional jury instruction that explicitly identifies a witness to the jury as an "accomplice," and referred to the latter as an "addendum" to the statutory instruction.[2] In this opinion, I too will use the term "addendum" to refer to the extra-statutory portion of the court's jury instruction in this case that identified Johnston as an accomplice witness as a matter of law.

As the parties agree, and as the majority observes, the record of the guilt phase in defendant's trial presents a sharp factual dispute about Johnston's role in the victim's murder. The state introduced evidence that, if believed,

---

[2] In *Gibson*, the state prosecuted Gibson for robbery after Gibson and a drinking companion, Wright, beat and kicked the victim, Landa. One or both of the aggressors also took Landa's billfold and money. Gibson and Wright accused each other of the robbery. Addressing an assignment that the trial court had erred by adding an explicit identification of the accomplice to the statutory accomplice witness instruction, this court stated:

"Since a part of the state's evidence against Gibson had been supplied by the testimony of Wright, the court was required to instruct that the testimony of an accomplice was to be viewed with distrust. *After giving the instruction in the words of the statute, the court then added, 'and as a matter of law, I instruct you in this case that Larry Wright is an accomplice of the defendant Monte Gibson.'*

"The defendant interprets *the addendum to the instruction* as an instruction to the jury that if they believed that Wright was guilty of the robbery then they must also find the defendant guilty."

252 Or at 243-44 (emphasis added).

would establish that Johnston and defendant had acted together in killing the victim. Defendant introduced evidence that, if believed, would establish that Johnston had acted alone in killing the victim.

When the parties rested, the court delivered the following jury instructions that related to the testimony of an accomplice:

> "*You are instructed that as a matter of law, Willford Nathaniel Johnston, the 3rd, is an accomplice witness in the commission of the crimes charged in this indictment.* You should view an accomplice witness's testimony with distrust. The testimony of an accomplice in and of itself is not sufficient to support a conviction. There must be, in addition, some other evidence, however slight or circumstantial, other than the testimony of an accomplice that tends to connect the defendant with the commission of the crime. This other evidence or corroboration need not be sufficient by itself to support a conviction, but it must tend to show something more than just that a crime was committed. It must also connect or tend to connect the defendant with the commission of the crime."

(Emphasis added.)

Defendant objected to the addendum embodied in the first sentence of those instructions, emphasized above, asserting that that instruction "cut the heart out of the defense" by defeating the defense theory that "Mr. Johnston did this crime alone and so he [Johnston] would not have been Mr. Oatney's accomplice." It is clear that the challenged instruction identified Johnston, as a matter of law, as an accomplice witness in the commission of the crimes charged in the indictment against defendant. Defendant argued that the instruction "assisted the State in proving that Mr. Oatney was, in fact, at the scene of the crime and helping out."

At the outset, I wish to note that I agree with the majority's stated view that a witness qualifies as an "accomplice," as ORS 10.095(4) uses that term, if the evidence is sufficient to *indict* the witness for the crimes charged against the defendant. As the following discussion demonstrates, my concern centers on the fact that the court's instruction failed

to convey that distinctive legal meaning of "accomplice" to the jury and, thus, required the jury to rely on the materially different common meaning of that term. I also join the majority's suggestion that trial courts can avoid the problem that arises from using the word "accomplice" in a jury instruction simply by informing the jury that the law requires the jury to view the witness's testimony with distrust and that other evidence must corroborate the witness's testimony. 335 Or at 290 n 13.

This court's cases demonstrate that an accomplice-witness instruction can interfere with the jury's responsibility to determine the pertinent facts relating to guilt or innocence. That is so because an accomplice-witness instruction can permit or require the jury to draw multiple inferences about the state's evidence, one or some of which assist the state in establishing the defendant's guilt. For example, in *Simson*, the defendant, a truck driver, was charged with theft when several people stole his truck. Three of the thieves testified at the defendant's trial, but did not implicate the defendant in the crime. The trial court gave an accomplice instruction over the defendant's objection. This court held that giving the accomplice instruction was a legal error:

> "By instructing the jury that the witnesses were accomplices in the crime as a matter of law, the trial court effectively instructed the jury that the crime was in fact committed. This deprived defendant of his right to a jury trial on all elements of the charge. Normally, the accomplice-as-a-matter-of-law instruction presents no problem, because the instruction is requested by the defendant. A defendant will risk the implication that a crime was committed in order to cast doubt on the veracity of his accusers. But, in this case, it could serve to cast doubt only on the veracity of those whose testimony favored him. Defendant received no trade-off.[10]

---

"[10] We think that, as a general rule, these instructions ought not to be given unless requested by the defendant."

308 Or at 109-10.

In *Simson*, this court interpreted the accomplice instruction in a commonsense fashion. Although the instruction did not state literally that the crime in fact had been committed, the court had no difficulty drawing that reasonable inference from the statement in the instruction that the witnesses were accomplices in the crime. *Simson* teaches that, when considering the propriety of accomplice instructions, the court takes into account not only the words of the instructions but also the reasonable inferences that the words convey.

In *Gibson*, as already noted, this court examined whether the trial court erred in instructing the jury that defendant's associate, Wright, " 'is an accomplice of the defendant Monte Gibson[ ]' " in Gibson's trial for robbery. 252 Or at 244. Gibson had admitted that he and Wright had been accomplices in the lesser crime of assault and battery, and that he was guilty of that crime. This court concluded that the addendum instruction, identifying Wright as Gibson's accomplice, "was erroneous, but that the error was harmless." *Id.* at 245. The *Gibson* court did not explain why, under the circumstances, the error was harmless. I discuss the harmless error conclusion in *Gibson* later in this opinion.

The problem created by the addendum instruction in this case more closely resembles the problem addressed in *Gibson* than that in *Simson*. Unlike the facts in *Simson*, defendant conceded that a crime had occurred and, consequently, the accomplice-witness instruction gave the state no undue assistance in proving that aspect of its case.

*Gibson* lends support to defendant's argument that, under the facts of this case, delivery of an addendum instruction identifying a purported accomplice witness as a matter of law constitutes legal error. As in *Gibson*, the instruction here bound the jury to accept that the state's witness was an "accomplice" in the crime charged against defendant. The word "accomplice" has the following commonly understood definition that, we must assume, the jurors applied:

"[O]ne associated with another in wrongdoing : one that participates with another in a crime either as principal or accessory * * *."

*Webster's Third New Int'l Dictionary* 12 (unabridged ed 1993). The factual inference that the addenda in *Gibson* and this case reasonably conveyed, in the context of the evidentiary record, was that the witness had participated in the crime with another actor and that the other joint actor had been the named defendant.

The majority attempts to distinguish *Gibson* by pointing out that, in *Gibson,* the challenged instruction expressly described Wright as an *accomplice* and linked Wright with the defendant Gibson by name, whereas the instruction here stated that Johnston was an *accomplice witness* and did not mention defendant by name.[3] The majority's argument is unavailing, in my view, because it fails to acknowledge fully the reasonable inferences that arise from the instructions' words. There is nothing magical about the phrase "accomplice witness." It does not appear in ORS 10.095(4), and the trial court gave the jury no special definition for it. The word "witness" in the phrase "accomplice witness" does nothing to alter the phrase's reasonable inference that Johnston was a witness who had participated with another actor in committing the crimes charged in the indictment. Moreover, the fact that the addendum instruction here did not mention defendant by name is not significant. On this record, only one person possibly could have associated with Johnston in killing the victim: defendant. Only one person is named in the "crimes charged in this indictment[ ]," to which the instruction referred: defendant. Thus, although some of the words of the addendum here differ from those in the addendum in *Gibson,* the factual message in each is indistinguishable.

The majority's failure to acknowledge the full effect of labeling Johnston as an accomplice in this case operates to defeat rather than support the legislature's purpose in enacting ORS 10.095(4).[4] ORS 10.095(4) embodies a legislative policy determination that a jury ought to view with distrust "the

---

[3] The majority asserts that Johnston met the legal definition of an accomplice and that the addendum portrayed Johnston as an accomplice witness to a crime, not as defendant's accomplice. In *Simson,* this court noted that the dissenting opinion in the Court of Appeals had relied on the same distinction, but ultimately rejected that dissenting opinion. 308 Or at 107-08.

[4] That concern arguably is more pronounced under the facts of this case than in *Gibson.* Here, unlike in *Gibson,* defendant admitted no involvement or cooperation with the state's witness in carrying out the crimes charged in the indictment.

testimony"—that is, *all* the testimony—of an accomplice. On this record, that policy choice means that, if Johnston had been involved in the murder, then the court must not undermine the jury's responsibility to view with distrust *all* of Johnston's testimony, *including his claim that he and defendant had acted together in killing the victim*. The addendum instruction here required the jury to accept the court's factual determination, in contradiction to defendant's testimony, that the witness was an accomplice and, consequently, had not acted alone.

The majority states several reasons for concluding that the delivery of the addendum instruction in this case was not an error. With respect, I do not accept those reasons. The majority acknowledges that the instruction, "viewed alone and as an abstract proposition, would *allow* a juror to conclude, from the description of Johnston's status as an 'accomplice witness,' that the trial court was stating that another person necessarily had committed the crimes with Johnston." 335 Or at 290 (emphasis added). The majority asserts, however, that *other* instructions told the jury about the state's burden of proof, the jury's role as factfinder, and the like. *Id.* at 290-91. The majority also points to the fact that the addendum instruction was just four lines in the transcript. Finally, the majority asserts that the addendum "told the jury only that Johnston was the *kind of witness* who was to be viewed with distrust and whose testimony must be corroborated. It did not tell the jury that the jury must conclude that Johnston and defendant had acted together." *Id.* at 291 (emphasis in original).

I agree that we must examine all the jury instructions together to determine whether they accurately state the law. The addendum instruction does convey the inference, as the majority observes, that Johnston did not act alone in committing the murder. *Id.* at 291. However, the addendum instruction required the jury to accept that inference about Johnston "as a matter of law." It did not merely "allow" the jury to agree with that inference, and the majority errs in asserting that the addendum was only permissive in that regard.

None of the other jury instructions to which the majority refers effectively negated the addendum instruction. The most that we can say about those other instructions

is that they spoke generally about the subjects of the state's burden of proof and the jury's role as the factfinder.

The majority's assertion that the addendum instruction took up only four lines of the transcript is beside the point. Finally, I cannot agree with the majority's assertion that the addendum instruction did not tell the jury that it must conclude that Johnston and defendant had acted together. As noted above, if Johnston indeed had been involved in the murder, then defendant was the only possible person with whom Johnston could have acted in murdering the victim. The majority disregards both the text of the addendum and the factual record in asserting that, notwithstanding the court's contrary instruction *as a matter of law*, the jury still could have accepted "defendant's theory that Johnston had acted alone * * *." *Id.* at 292.

I turn to the question whether the trial court's error harmed defendant. The court does not presume that an instructional error is harmful to the defendant. The record must demonstrate that the error may have led the jury to convict defendant due to a misstatement of law regarding the jury's discretion to accept or reject inculpatory testimony. *See State v. Rawls*, 247 Or 328, 330, 429 P2d 574 (1967) (instruction on conclusive presumption regarding intent was error, because jury entitled to accept or reject all or part of a defendant's testimony or state's evidence).

In this case, as noted above, defendant testified that Johnston had acted alone in killing the victim. He did not concede that he took any action to aid Johnston until after Johnston had committed the murder. However, by identifying Johnston as an accomplice witness as a matter of law in the commission of the crimes charged, the addendum instruction restricted the jury's authority to conclude, in conformance with defendant's testimony, that Johnston had acted alone in murdering the victim. The court in *Rawls* acknowledged that there might be only a slight possibility of a different outcome from an instructional error that misstated the jury's factfinding role, but nevertheless remanded for a new trial. The same result should obtain here.

In *Gibson*, as noted above, this court concluded that, on the facts of that case, the trial court had erred in delivering the addendum to the accomplice-witness instruction, but

that the error was harmless. The court never disclosed its reasoning for that conclusion. However, I infer from the *Gibson* court's discussion that the decisive facts were that the defendant conceded that he and Wright had been accomplices in the commission of the lesser charge of assault and battery, that the robbery had occurred during the assault and battery of the victim, that the addendum instruction had made no mention of the crime or crimes for which the defendant and Wright had been accomplices, and that the defendant had not objected to the form of the addendum instruction.

Those unique aspects of *Gibson* are not present here. The court's identification of Johnston as an accomplice witness as a matter of law may have led the jury to conclude that, contrary to defendant's testimony, Johnston did not act alone. *See State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (lack of instruction on causation may have led jury to convict without necessary finding on motivation for murder; "[t]he prejudice to defendant is profound, because the missing element makes the difference between life and death"). Nothing else in the record demonstrates that the error was harmless.

For the foregoing reasons, I respectfully dissent.