Argued and submitted May 4, the decision of the Court of Appeals affirmed, reversed and remanded to the trial court for a new trial June 13, 1989

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## LARRY ALDEN SIMSON,
*Respondent on Review.*

(TC 86-0353; CA A42379; SC S35891)

775 P2d 837

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause on behalf of petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Leland R. Berger, Portland, argued the cause on behalf of respondent on review.

GILLETTE, J.

### GILLETTE, J.

■      The issue in this criminal case is whether a trial court properly may instruct a jury that a witness's testimony is accomplice testimony and should be viewed with distrust when that testimony does not implicate the defendant in the crime. We hold that the cautionary accomplice-witness instructions should only be given when the "accomplice" testimony implicates the defendant.

### FACTS

Defendant had been a truck driver for United Grocers for twenty years. On December 18, 1985, at approximately 3:30 a.m., he made his regular breakfast stop at a Shari's restaurant in Sherwood. He parked his truck in the restaurant parking lot and left his keys in the truck. Defendant then entered the restaurant and sat at the counter near Chris Spindler, an acquaintance. The two conversed for about ten minutes, then Spindler left. During this conversation, William Bradbrook stole defendant's truck. Shortly thereafter another truck driver entered the restaurant and informed defendant that his truck was not in the parking lot. Defendant finished his coffee, left the restaurant, and returned 20 minutes later. At that time he reported the missing truck to a deputy sheriff who happened to be eating at the restaurant. The deputy summoned the local police.

When questioned by the police, defendant denied knowing Spindler, but accurately described him. The police recovered the truck the next day and arrested Spindler, Bradbrook, Billy Minor and Joy Jonas for the theft. The first three were convicted of the theft prior to defendant's trial.

Defendant was also charged with the theft. Spindler testified at defendant's trial. He admitted that he planned the theft of the truck and that he had known defendant for at least two years, having met him at a tavern known as "Icabod's." Based upon conversations at Icabod's, Spindler knew that defendant regularly stopped at Shari's for breakfast at 3:30 a.m. He also knew that defendant always left his keys in the truck. Spindler claimed never to have directly discussed his plan to steal defendant's truck with defendant.

Spindler organized the theft, recruiting Bradbrook to drive the truck and Minor, Jonas, and another person to

unload the truck. The plan called for Spindler to encounter defendant at Shari's and engage him in conversation while Bradbrook drove away in the truck. Spindler would remain at Shari's for a few more minutes to ascertain if the truck's unscheduled departure had been noticed. Meanwhile, Bradbrook was to drive the truck to an isolated location where its contents would be unloaded into two rented U-Haul vans. The theft went according to plan, but two days later a telephone tip led to Spindler's arrest and the recovery of most of the truck's contents.

Bradbrook also testified at defendant's trial. He stated that he did not know of any involvement by defendant in the theft and, in fact, had worried that the truck's driver would spot him stealing the truck. Minor also testified that he knew of no involvement by defendant. Jonas did not testify because she had died.

Defendant had requested the standard accomplice instructions, but he withdrew the request when the testimony of Spindler, Bradbrook, and Minor failed to implicate him. The trial court gave the instructions over defendant's objection.[1]

---

[1] The following accomplice instructions were given:

"The testimony of an accomplice witness in and of itself is not sufficient to support a conviction. There must be, in addition, some evidence other than the testimony of an accomplice witness that tends to connect the Defendant with the commission of the crime. This other evidence or corroboration need not be sufficient by itself to support a conviction, but it must tend to show something more than just a crime was committed. It must also connect or tend to connect the Defendant with the commission of the crime. [Uniform Criminal Jury Instruction (hereafter "UCrJI") No. 1058, with slight modifications]

"A victim of a crime does not aid or abet the commission of that crime, and is, therefore, not an accomplice in the commission of that crime. [UCrJI No. 1060(1)]

"You are instructed that as a matter of law Christopher Spindler, William Bradbrook, and Billy Minor are accomplice witnesses in this case in the commission of the crimes of theft in the first degree, unauthorized use of a vehicle and conspiracy. [UCrJI No. 1060(2)]

"The other evidence that is required to corroborate the testimony of a witness may not be supplied by the testimony of another accomplice or accomplices. It must instead come from other evidence apart from the activity of another accomplice or accomplices. [UCrJI No. 1060(4), with slight modifications]

"When you find that a person is an accomplice witness, then you should view that accomplice witness' testimony with distrust." [UCrJI No. 1059, with slight modifications]

Defendant was convicted of theft in the first degree,[2] unauthorized use of a motor vehicle,[3] and criminal conspiracy.[4] Defendant appealed, and the Court of Appeals reversed. *State v. Simson,* 93 Or App 330, 762 P2d 323 (1988). We allowed the State's petition for review, and now affirm.

## THE COURT OF APPEALS OPINIONS

Although the Court of Appeals reversed the trial court, it did so in a two-to-one decision with three separate opinions. Joseph, C. J., writing the lead opinion for the court, held that it was improper to instruct the jury that the three witnesses were accomplices as a matter of law. According to this opinion, the question is not whether the witnesses had been convicted of the crimes in question—obviously, they

---

[2] ORS 164.055(1), provides in pertinent part:

"A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $500 or more in any other case * * *."

The value of the truck's contents exceeded $500. ORS 164.015 provides in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof * * *."

[3] ORS 164.135(1) provides:

"A person commits the crime of unauthorized use of a vehicle when:

"(a) The person takes, operates, exercises control over, rides in or otherwise uses another's vehicle, boat or aircraft without consent of the owner; or

"(b) Having custody of a vehicle, boat or aircraft pursuant to an agreement between the person or another and the owner thereof whereby the person or another is to perform for compensation a specific service for the owner involving the maintenance, repair or use of such vehicle, boat or aircraft, the person intentionally uses or operates it, without consent of the owner, for the person's own purpose in a manner constituting a gross deviation from the agreed purpose; or

"(c) Having custody of a vehicle, boat or aircraft pursuant to an agreement with the owner thereof whereby such vehicle, boat or aircraft is to be returned to the owner at a specified time, the person knowingly retains or withholds possession thereof without consent of the owner for so lengthy a period beyond the specified time as to render such retention or possession a gross deviation from the agreement."

[4] ORS 161.450(1) provides:

"A person is guilty of criminal conspiracy if with the intent that conduct constituting a crime punishable as a felony or a Class A misdemeanor be performed, the person agrees with one or more persons to engage in or cause the performance of such conduct."

had—but whether they "were criminally liable for a crime committed by *defendant." State v. Simson, supra,* 93 Or App at 335 (emphasis in original). Because defendant's participation in the crime was denied by the witnesses as well as by defendant himself, the lead opinion held that "there was a factual issue for the jury's determination as to whether the other evidence showed that, despite their denial, the witnesses were in fact involved with defendant in a crime." *Id.* Thus, the accomplice instruction improperly told the jury "that [the witnesses] had in fact participated in criminal acts with defendant." *Id.* at 336. The lead opinion appears to conclude that this amounted to an instruction that defendant, as a matter of law, had participated in criminal acts.

The dissent by Rossman, J., takes a different view. The dissent notes that, according to *State v. Hull,* 286 Or 511, 515, 595 P2d 1240 (1979), "the test for determining when a witness should be viewed as an accomplice is whether the witness could be indicted as an accomplice to the offense charged against the defendant." *State v. Simson, supra,* 93 Or App at 337 (Rossman, J., dissenting). Because the witnesses had been indicted and convicted, the dissent would hold that they were accomplices as a matter of law. The dissent accused the majority of confusing "the separate concepts of 'accomplice to the defendant' and 'accomplice witness to a crime.' " *Id.* at 338. It is the latter whose testimony must be viewed with distrust, the dissent argued, and Spindler and friends were, as a matter of law, the latter.

The dissent points out what it viewed as a significant logical flaw in the majority's reasoning: If a jury must first find that a defendant participated in criminal activity with the witness before it applies the accomplice witness instructions, then the instructions will only be applied after the jury has concluded that the defendant is guilty. Clearly, such a construction renders accomplice instructions entirely pointless.[5]

The specially concurring opinion by Buttler, P. J., would hold that it was not only erroneous to instruct that the

---

[5] There could be a situation where a jury could first find that a defendant participated in a lesser crime with the witness and, based upon that determination, view the rest of the witness's testimony with distrust. However, such a situation would be rare and the accomplice witness instructions, especially when they favor the defendant, must be of greater applicability than just this one exceptional circumstance.

witnesses were accomplices as a matter of law, but also that it would be improper, in this case, to give any accomplice instructions at all. ORS 136.440 provides that a defendant may not be convicted based upon the uncorroborated testimony of an accomplice.[6] However, in this case, the alleged accomplice witnesses' testimony did not implicate defendant. Thus, "their testimony need not be corroborated to convict defendant, because it cannot convict him by itself." *State v. Simson, supra,* 93 Or App at 337 (Buttler, P. J., specially concurring). Because ORS 136.440 is not involved, the concurrence would hold that ORS 10.095(4),[7] which requires that "on proper occasions" the jury be instructed to view accomplice testimony with distrust, does not apply to the present case. In essence, the concurrence would hold that the accomplice instructions are designed to protect defendants, not the state.

Although all three opinions have merit—and we would be free to adopt a fourth view, if that appeared justified—we are most persuaded by the reasoning of the special concurrence.

## ANALYSIS

In this case, the trial court gave several instructions relating to accomplice witnesses.[8] The core instruction, Uniform Criminal Jury Instruction (hereafter "UCrJI") No. 1058, arises out of ORS 136.440 and its requirement that accomplice testimony be corroborated before a defendant may be convicted. That instruction has no direct application to this case.

---

[6] ORS 136.440 provides:

"(1) A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission.

"(2) As used in this section, an 'accomplice' means a witness in a criminal action who, according to the evidence adduced in the action, is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165, or, if the witness is a juvenile, has committed a delinquent act, which, if committed by an adult, would make the adult criminally liable for the conduct of the defendant."

[7] ORS 10.095 provides in part:

"[The jury is] to be instructed by the court on all proper occasions:

"* * * * *

"(4) That the testimony of an accomplice ought to be viewed with distrust * * *."

[8] UCrJI 1058, 1059, and 1060(1), (2), and (4). *See, supra,* n 1.

Instructing the jury that they cannot convict defendant upon uncorroborated accomplice testimony makes no sense when the "accomplice" testimony itself does not implicate defendant in the crime. If the state had rested after presenting only the testimony of Spindler, Bradbrook, and Minor, the trial court would have granted a motion for judgment of acquittal—not because the testimony was uncorroborated, but because it did not implicate defendant in the commission of any crime. Even if the judge (and the jury, for that matter) disbelieved the three witnesses' denial of defendant's involvement, their testimony would still not suffice to convict defendant. Mere disbelief of a witness's positive assertion of fact would not constitute evidence to support the finding of a contrary fact. Thus, it was inappropriate to give UCrJI 1058 in this case.

Given this conclusion, it also was inappropriate to give the other accomplice instructions. These other instructions, UCrJI 1059 and 1060(1), (2) and (4), are designed to expand upon the concept of an accomplice in order to make it clear to a jury exactly when corroboration is required.[9]

Even if the other accomplice instructions were not dependent upon the corroboration requirement of ORS 136.440, it was improper in this case to instruct the jury that the witnesses were accomplices as a matter of law. Defendant contends that the accomplice-as-a-matter-of-law instruction amounted to an instruction that defendant had committed the crime along with the witnesses or, in effect, a directed verdict of guilty. We would not go that far. We believe that the jury would understand that the determination of defendant's guilt was its to make and we doubt that the jury would have understood the instruction to be an order to find the defendant guilty, given the instructions as a whole. *See generally State v. Hull, supra.*

The instruction was still erroneous, however. By instructing the jury that the witnesses were accomplices in the crime as a matter of law, the trial court effectively instructed the jury that the crime was in fact committed. This deprived defendant of his right to a jury trial on all elements of the

---

[9] UCrJI 1060(1) was also inappropriate in this case, because the only witness to whom it could possibly apply was defendant himself.

charge. Normally, the accomplice-as-a-matter-of-law instruction presents no problem, because the instruction is requested by the defendant. A defendant will risk the implication that a crime was committed in order to cast doubt on the veracity of his accusers. But, in this case, it could serve to cast doubt only on the veracity of those whose testimony favored him. Defendant received no trade-off.[10]

Finally, it is important to remember the purpose of the corroboration requirement and its accompanying instructions: criminals may falsely accuse others of their misdeeds in order to minimize their own culpability. This concern is not present when the alleged accomplices are not, in fact, trying to shift blame.[11]

## CONCLUSION

■ The cautionary instructions based on ORS 10.095(4) and concerning accomplice testimony are designed to warn juries of the danger that one criminal may try to shift the blame for his misdeed onto another person, usually in an effort to lessen the accomplice's own punishment. Such instructions are inappropriate in a case such as the present one in which none of the "accomplices" implicated the defendant. It was error to have given them.

The decision of the Court of Appeals is affirmed. The case is remanded for a new trial. If the matter is retried, no accomplice testimony instructions are to be given unless a change in the state of the evidence warrants such instructions.

The decision of the Court of Appeals is affirmed. The case is reversed and remanded to the trial court for a new trial.

---

[10] We think that, as a general rule, these instructions ought not to be given unless requested by the defendant.

[11] Some courts have focused on the inherent unreliability of anyone involved in the crime at issue as the basis for distrusting accomplice testimony. However, participation in the crime is of special concern only insofar as it gives a witness a motive to shift blame to someone else. In cases in which the opposite occurs, i.e., a party already facing long imprisonment gives testimony *exculpating* a defendant on trial, the witness' unreliability may be developed sufficiently by cross-examination for bias. The state does not need instructional help other than the standard instruction on bias. ("In evaluating each witness's testimony, however, you may consider such things as: * * * (4) Evidence concerning the bias, motives, or interest of the witness." UCrJI 1004.) The accomplice corroboration instructions are not required to deal with this concern.