Submitted on record and briefs July 9, reversed and remanded November 7, 2007

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## PATRICK RAMBERT,
aka Patrick Rembert,
*Defendant-Appellant.*

### Multnomah County Circuit Court
020633513; A126882

171 P3d 398

James N. Varner filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his convictions for two counts of assault in the second degree with a firearm, ORS 163.175, and asserts three assignments of error. We write to discuss only defendant's first assignment of error. The issue under that assignment is whether a trial court errs in giving an accomplice-witness jury instruction under ORS 10.095(4) over the defendant's objection when the accomplice testimony not only implicates the defendant in the commission of the crime but also supports the defendant's self-defense claim. We review for errors of law, ORS 138.220, and reverse.

At trial, defendant offered the testimony of Reed, defendant's girlfriend at the time of the shooting, to support his claim of self-defense. Defendant was involved in drug-dealing activities. Reed testified that, on the day of the shooting, she dropped defendant off in downtown Portland, keeping a backpack with a gun, scales, and drugs in the car with her. She had returned to their hotel room in Beaverton when she received a telephone call from defendant. Reed testified that defendant sounded worried and scared. He told Reed that "some guys * * * were messing with him * * * and he needed to get out of there." Defendant told Reed to come back to his location and to "pick him up right away."

Reed went to meet defendant at a Burger King Restaurant where she parked and waited. After a while, she observed that defendant was surrounded by four or five people. They were hitting and kicking him. Reed jumped out of the car, grabbed the gun out of the backpack, and walked quickly across the street. Defendant was lying on the ground while the group continued to strike him. According to Reed, the people around defendant were threatening to kill him. Defendant got up from the ground, and Reed gave him the gun. She then saw a man walking backwards, "messing with his waistband," and "pulling his shirt up" as if reaching for a weapon. She ran back to her car and got in. She heard gunshots and started to leave, at which point defendant got into the car with her. Reed observed that defendant had been shot in the thumb.

At trial, after the parties rested, the state requested and the trial court gave the following statutory accomplice-witness jury instruction over defendant's objection:

"To determine if [Ms.] Reed could be charged with this crime, you must decide, based on the evidence received at trial, whether there's a substantial, objective basis for believing, more likely than not, [Ms.] Reed either committed that crime or aided and abetted another person committing the crime.

"Accomplice testimony. If you determine that a witness was an accomplice witness, then you should view that accomplice witness' testimony with distrust."

On appeal, defendant argues that the trial court erred by giving the above instruction. The accomplice-witness instruction is one of a number of statutory jury instructions concerning the effect or value of evidence, which the trial court is required to give "on all proper occasions." ORS 10.095. Defendant does not dispute that there is evidence from which a jury could find Reed to be an accomplice. Instead, he argues that it was error to give the accomplice-witness instruction because Reed's testimony, in his view, was exculpatory in nature.

The issue then is whether, under the circumstances of this case, it was "proper" to give the instruction. In general, it is proper to give a statutory instruction under ORS 10.095 when the evidence provides a basis for it. *State v. Long,* 106 Or App 389, 395, 807 P2d 815 (1991), *overruled on other grounds by Portland v. Jackson,* 111 Or App 233, 826 P2d 37 (1992). Two decisions of the Supreme Court inform the issue of whether it was proper to give the instruction under the circumstances of this case.

In *State v. Simson,* 308 Or 102, 775 P2d 837 (1989), three persons were convicted of theft of a truck that the defendant was employed to drive. The defendant was also charged with the theft of the truck. The three previously convicted witnesses testified that the defendant was not involved in the theft, contrary to the prosecutor's expectations when they were called as witnesses. *Id.* at 104-05. The trial court gave the accomplice-witness instruction over the defendant's objection and instructed the jury that the three

witnesses were accomplices as a matter of law. *Id.*at 105. The Supreme Court reversed the defendant's conviction, ruling that the instructions were inappropriate:

> "By instructing the jury that the witnesses were accomplices in the crime as a matter of law, the trial court effectively instructed the jury that the crime was in fact committed. This deprived defendant of his right to a jury trial on all elements of the charge. Normally, the accomplice-as-a-matter-of-law instruction presents no problem, because the instruction is requested by the defendant. A defendant will risk the implication that a crime was committed in order to cast doubt on the veracity of his accusers. But, in this case, it could serve to cast doubt only on the veracity of those whose testimony favored him. Defendant received no trade-off."

*Simson*, 308 Or at 109-10. In sum, the court observed that the accomplice-as-a-matter-of-law instruction should be given only when the accomplice testimony implicates the defendant in the commission of the crime. *Id.* at 110.

The *Simson* court also made a number of observations about the purpose of the accomplice-as-witness instructions that bear on the issue before us. The court explained:

> "[I]t is important to remember the purpose of the corroboration requirement and its accompanying instructions: criminals may falsely accuse others of their misdeeds in order to minimize their own culpability. This concern is not present when the alleged accomplices are not, in fact, trying to shift blame."

308 Or at 110. The court then noted:

> "Some courts have focused on the inherent unreliability of anyone involved in the crime at issue as the basis for distrusting accomplice testimony. However, participation in the crime is of special concern only insofar as it gives a witness a motive to shift blame to someone else. In cases in which the opposite occurs, *i.e.*, a party already facing long imprisonment gives testimony *exculpating* a defendant on trial, the witness' unreliability may be developed sufficiently by cross-examination for bias. The state does not need instructional help other than the standard instruction on bias. * * * The accomplice corroboration instructions are not required to deal with this concern."

*Id.* at 110 n 11 (emphasis in original).

In *State v. Oatney*, 335 Or 276, 66 P3d 475 (2003), *cert den*, 540 US 1151 (2004), both the defendant and the accomplice-witness, Johnston, were arrested for murder. *Id.* at 278-79. Johnston pleaded guilty to aggravated murder, and in exchange for his plea, the state agreed not to seek the death penalty. *Id.* at 279. At the defendant's trial, both the defendant and Johnston testified. *Id.* Johnston testified that he had helped the defendant kill the victim and dispose of the body. *Id.* at 280. The defendant argued that Johnston lied on the witness stand and that Johnston alone had killed the victim. *Id.* at 280. On appeal, the defendant assigned error to the trial court's giving of the accomplice-witness instruction, arguing that it was reversible error for a trial court to give the instruction unless a defendant requests it. *Id.* at 281. The Supreme Court disagreed, ruling that the trial court properly gave the accomplice-witness instruction because Johnson's testimony implicated the defendant in the commission of the crime. *Oatney*, 335 Or at 288.

■ *Simson* and *Oatney* are consistent with the understanding that the proper occasion for giving a statutory instruction under ORS 10.095(4) is when the thrust of the accomplice testimony *implicates* the defendant in criminal conduct. *Oatney*, 335 Or at 286. On the other hand, as the court explained in *Simson*, when the accomplice testimony is exculpatory in nature and does not shift blame to the defendant, the instruction is inapplicable. 308 Or at 110.

■ The circumstances of this case are more like what occurred in *Simson,* where the testimony of the accomplices was introduced by the prosecution but turned out to be favorable to the defendant. Here, defendant did not seek to cast doubt on Reed's testimony; rather, he offered her testimony to support his defense that he acted in self-defense. Moreover, the state had the burden of disproving that defendant acted in self-defense. ORS 161.055(1); *State v. Freeman*, 109 Or App 472, 475, 820 P2d 37 (1991).[1] Thus, on an issue on

---

[1] ORS 161.055(1) provides, "When a 'defense,' other than an 'affirmative defense' as defined in subsection (2) of this section, is raised at a trial, the state has the burden of disproving the defense beyond a reasonable doubt." Self-defense is not an affirmative defense, but rather an "ordinary defense," which the state must disprove beyond a reasonable doubt. *State v. Freeman*, 109 Or App 472, 476 n 4, 820 P2d 37 (1991) (citing Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 4 (July 1970)).

which the state had the burden of proof, the accomplice-witness instruction directed the jury to view defendant's primary witness with distrust if it found her to be an accomplice. In that light, the accomplice-witness instruction could have served only to cast doubt on the veracity of a witness whose testimony was mostly exculpatory in nature. It follows that the trial court erred in giving the instruction.

■■ We must also consider whether the error was harmless. Article VII (Amended), section 3, of the Oregon Constitution requires us to affirm the trial court's judgment even if error was committed, if that error was harmless. *State v. Affeld*, 307 Or 125, 128, 764 P2d 220 (1988); *see also* ORS 138.230. "Oregon's constitutional test for affirmance despite error consists of a single inquiry: Is there little likelihood that the particular error affected the verdict?" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The *Davis* court further elaborated on the proper inquiry:

> "In determining whether the error affected the verdict, it is necessary that we review the record. However, in so doing, we do not determine, as a factfinder, whether the defendant is guilty. That inquiry would invite this court to engage improperly in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial, to determine whether the defendant is guilty. Rather, when we review the record, we do so in light of the error at issue. We ask whether there was little likelihood that the error affected the jury's verdict. * * * [It] is not a finding about how the court views the weight of the evidence of the defendant's guilt. It is a legal conclusion about the likely effect of the error on the verdict."

*Id.*; *see also State v. Cook*, 340 Or 530, 544-45, 135 P3d 260 (2006) (court applies harmless error analysis to particular issue or issues implicated in erroneous admission of evidence).

The state argues that any error in giving the instruction was harmless because "[t]he view-with-distrust-accomplice-testimony instruction is a form of a bias instruction * * * [and] the jury had ample evidence of Reed's potential bias and an instruction to guide them on the point." Although the trial court did provide a standard bias instruction, that instruction was materially different in content from the

accomplice-witness instruction. Specifically, the trial court instructed the jury that, "[i]n evaluating each witness's testimony, however, you *may* consider * * * evidence concerning the bias, motives or interests of a witness." (Emphasis added.) In contrast, the accomplice-witness instruction told the jury, "If you determine that a witness was an accomplice witness, then you *should* view that accomplice witness's testimony with distrust." (Emphasis added.) The material difference between the two instructions is that the former *permits* the jury to distrust the witness if it finds the witness is biased while the latter *requires* the jury to distrust the witness if it finds the witness is an accomplice.

Reed's testimony was central to defendant's defense of self-defense and tended to corroborate his version of the events. Although other witnesses testified that defendant was assaulted by a group of people, we cannot say that Reed's testimony was merely cumulative of the other evidence on that issue. The state points to the fact that other witnesses confirmed Reed's testimony of a serious attack on defendant as a "compelling indication that the alleged error would not have affected the jury's determination that defendant had been assaulted." However, the critical issue in the case was not whether defendant had been assaulted—it was whether defendant acted in self-defense. The state's evidence portrayed defendant as calmly and deliberately discharging his firearm in retaliation for the assault. In contrast, Reed's testimony indicates that defendant was scared, that she heard threats to kill defendant, and that she saw a man acting as if he was reaching for a gun. Indeed, Reed testified that when defendant returned to the car, he had been wounded. Based on all of these circumstances, we cannot say, on the record before us, that there was little likelihood that the erroneous giving of the accomplice-witness jury instruction affected the jury's verdict.

Reversed and remanded.