Argued and submitted January 28, Counts 2 through 15, and 17 through 30, reversed; remanded for resentencing; otherwise affirmed July 1, 2009

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## VALENTIN ORTIZ-RODRIGUEZ,
*Defendant-Appellant.*

Washington County Circuit Court
C062863CR; A135984

211 P3d 373

Ryan Scott argued the cause and filed the brief for appellant.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was convicted of 15 counts of unlawful delivery of methamphetamine, ORS 475.890, and (stemming from the same 15 incidents) 15 counts of unlawful possession of methamphetamine, ORS 475.894.[1] On appeal, he advances two assignments of error. In the first, he argues that the trial court committed plain error by admitting a laboratory report without testimony from the criminalist who prepared it. We rejected an indistinguishable claim in *State v. Raney*, 217 Or App 470, 474, 175 P3d 1024, *rev den*, 344 Or 671 (2008), decided after defendant's brief was submitted, and we reach the same conclusion here without further discussion. In his second assignment of error, defendant argues that the trial court erred in denying his motion for a judgment of acquittal on 28 of the 30 drug counts because the only evidence of his involvement in the conduct giving rise to those counts was the testimony of an accomplice witness, which, because it was not corroborated, is insufficient under ORS 136.440(1). We affirm in part, reverse in part, and remand for resentencing.

On October 21, 2006, police executed a search warrant at the home of Brenda Kearl, where they found methamphetamine, baggies, and scales. Kearl agreed to provide information to police about her methamphetamine supplier, defendant in this case, and to assist with a "controlled buy" of methamphetamine from him in exchange for a recommendation that she receive a lenient sentence. Kearl told the officers (and subsequently testified) that she had purchased methamphetamine from defendant more than once and that each purchase had happened in the same way: she would contact defendant on his cell phone, specify a meeting time, meet him in the parking lot at a particular Tigard apartment complex, and purchase either a half ounce of methamphetamine for $450 or, in most cases, an ounce of methamphetamine for $850. She explained that defendant would sometimes pick her up and conduct the exchange while driving around the lot. She told the officers (and testified) that her only contact with defendant was to buy drugs.

---

[1] Defendant was also convicted of two counts of possession of a forged instrument. He does not appeal from his convictions on those counts.

Later that day, the officers had Kearl use her cell phone to call defendant and arrange to meet him to conduct the controlled buy. One officer, Desmond, noted the number that she called. At trial, the officers testified that neither Kearl nor defendant "discuss[ed] * * * the meeting place, just that they were going to meet." Defendant asked Kearl if she "wanted * * * the usual," and she responded, "yeah, one." The officers provided Kearl with $850 to purchase one ounce of methamphetamine from defendant, satisfied themselves that she had no other money on her person, and began surveillance at the Tigard parking lot where they expected the delivery to occur.

Defendant arrived at the lot in a tan Honda, consistent with Kearl's description of his car. Kearl got into the vehicle and drove with defendant around the lot, and then he dropped her off. After defendant had driven away, Kearl was found to have no money and one baggie containing a substance that later tests determined to be methamphetamine. Police detained defendant shortly thereafter and found $850 in cash on his person.

In order to identify earlier drug transactions between Kearl and defendant, Desmond asked Kearl for all of the phone numbers that she had used to contact defendant. She gave Desmond three numbers, one of which was the same number that she had used during the controlled buy. With Kearl's permission, Desmond then obtained from the Internet a list of all of her outgoing cell phone calls dating back to April 1, 2006. He noted calls to the numbers that Kearl had identified as defendant's. Defendant was charged with 15 counts of delivery of methamphetamine and 15 counts of possession of methamphetamine based on 15 transactions: the controlled buy (Counts 1 and 16) and 14 transactions on the days that Kearl had called the numbers that she had provided to Desmond (Counts 2 through 15 and 17 through 30).

At trial, after the police officers testified about the controlled buy, Kearl testified that she had purchased at least a half-ounce of methamphetamine from defendant on several earlier occasions. She identified those occasions based on the fact that her cell phone records showed outgoing

phone calls from her to defendant on those occasions and on the fact that her only contact with defendant was to purchase methamphetamine. Seven of the contacts used the same phone number that Desmond recognized as the one that she had used during the controlled buy. The other contacts used two other phone numbers, which, she testified, also belonged to defendant during that six-month period.

After the state rested, defendant moved for a judgment of acquittal, contending that Kearl was an accomplice and that the other evidence presented by the state did not sufficiently corroborate her testimony regarding any of the transactions except the controlled buy. The state did not contest defendant's assertion that Kearl was an accomplice. It responded only that there was "more than enough corroboration." The court denied defendant's motion, concluding that there was sufficient corroboration "so it's not just the accomplice corroborating herself." Defendant was convicted on all counts.

On appeal, defendant challenges only the 28 counts based on the 14 transactions that allegedly occurred before the controlled buy and about which only Kearl testified. Defendant maintains that the state adduced no nonaccomplice evidence that connected defendant with the commission of those crimes. The state renews its response that there was sufficient corroboration, specifically, the facts that Kearl possessed methamphetamine and items that methamphetamine sellers use, that the controlled buy occurred in a way that mirrored her description of how earlier buys had occurred, that her conversation with defendant on the occasion of the controlled buy showed that other buys had occurred, and that, on the days of the alleged offenses, Kearl had telephoned defendant. The state also asserts, for the first time, that Kearl was not an accomplice and that we should affirm the trial court's ruling on that alternative basis.

■■    We begin with that alternative theory. The "right for the wrong reason" doctrine permits a reviewing court, in its discretion, to affirm the ruling of a lower court on an alternative basis, but only when

"(1) * * * the facts of record [are] sufficient to support the alternative basis for affirmance; (2) * * * the trial court's

ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) * * * the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 559-60, 20 P3d 180 (2001). Thus,

"even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 660 (emphasis in original). We need not determine whether the first two of the three *Outdoor Media* predicates were satisfied because, for the reasons that follow, we conclude that the record is not materially the same one that might have been developed had the state asserted its argument that Kearl was not an accomplice before the trial court.

ORS 136.440(2) defines "accomplice" as a person who "is criminally liable for the conduct of the defendant under ORS 161.155 and 161.165." ORS 161.155, in turn, provides that a person is criminally liable for the criminal conduct of another person if, "[w]ith the intent to promote or facilitate the commission of the crime," that person "[s]olicits or commands such other person to commit the crime" or "[a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime." ORS 161.165 limits that definition, providing that, "[e]xcept as otherwise provided by the statute defining the crime," a person is not criminally liable for the criminal conduct of another person if "[t]he person is a victim of that crime" or "[t]he crime is so defined that the conduct of the person is necessarily incidental thereto."

The state contends that Kearl merely received the deliveries of methamphetamine, and that, therefore, her conduct was "necessarily incidental" to those deliveries as a matter of law. ORS 161.165(2); *see also State v. Frederickson*, 92 Or App 223, 225, 757 P2d 1366 (1988) ("delivery" means

"transfer * * * from one person to another") (internal quotation marks omitted). Moreover, according to the state, Kearl never assisted or aided defendant in his procurement or possession of methamphetamine. *See, e.g., State v. Drury et al.,* 120 Or 546, 553, 252 P 967 (1927) (the defendant was guilty of aiding and abetting possession of intoxicating liquor where he knowingly drove the codefendant, and his liquor, from Eugene to Springfield); *State v. Smith,* 18 Or App 39, 523 P2d 1048 (1974) (the defendant was guilty of aiding and abetting possession of heroin where he knew person had heroin in her possession and helped her flee from police). The state thus maintains that no corroboration was required.

We agree with defendant, however, that, had the prosecutor not, in effect, conceded Kearl's accomplice status, the record would have developed in a materially different way. For example, if the state had argued that Kearl was not an accomplice to delivery, defendant could have developed the record in an attempt to demonstrate that she had solicited defendant's crime. *See* ORS 161.155(2)(a) (a person is liable for crime of another if the person solicits the crime). Regarding the possession offenses, defendant could have attempted to show that, during some of the alleged transactions, Kearl helped defendant avoid detection or capture. We conclude that this is not an appropriate case in which to apply the "right for the wrong reason" doctrine. The case, therefore, turns on the question of whether nonaccomplice evidence corroborates Kearl's testimony regarding the transactions other than the controlled buy.

██ Accomplice testimony has

> "long * * * been viewed with suspicion, both because of concern about the veracity of a witness who, by his or her own admission, has committed a crime, and because of concern that an accomplice might be induced to testify falsely against the person with whom he or she committed the crime by promises of leniency or immunity."

*State v. Oatney,* 335 Or 276, 283, 66 P3d 475 (2003), *cert den,* 540 US 1151 (2004); *see also State v. Rambert,* 216 Or App 39, 43, 171 P3d 398 (2007). The common-law principle has been codified at ORS 136.440(1):

> "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances of the commission."

The corroborating evidence must "fairly and legitimately tend[ ] to connect the defendant with the commission of the crime, so that it can in truth be said that his conviction is not based entirely upon evidence of the accomplice." *State v. Brake*, 99 Or 310, 314, 195 P 583 (1921); *accord State v. Torres*, 207 Or App 355, 360, 142 P3d 99 (2006); *State v. Norton*, 157 Or App 606, 609-10, 972 P2d 1198 (1998). That evidence may be circumstantial. *State v. Walton*, 311 Or 223, 243, 809 P2d 81 (1991); *see, e.g., State v. Dickerson*, 112 Or App 51, 57, 827 P2d 1354, *rev den*, 313 Or 627 (1992) (trial court did not err in denying motions for judgments of acquittal on charges of murder, felony murder, and kidnapping; testimony of accomplice was corroborated by testimony of nonaccomplice witness that the defendant had asked for directions to the park where the victim's body was later found and that he had then taken the victim to a car and left with her). Moreover, it is not necessary that there be independent evidence corroborating every material fact necessary to be established to sustain a conviction. *Walton*, 311 Or at 243. If any evidence exists, however slight or circumstantial, tending to connect the defendant with the crime other than the testimony of the accomplice, the question whether the accomplice's testimony is so corroborated as to establish the defendant's guilt beyond a reasonable doubt is one for the trier of fact. *State v. Long et al.*, 113 Or 309, 312, 231 P 963 (1925); *accord Walton*, 311 Or at 243; *Norton*, 157 Or App at 610.

■ Here, the state argues that Kearl's possession of methamphetamine, scales, and baggies corroborates her testimony that defendant sold her an ounce or more of methamphetamine on 14 previous occasions because that evidence tends "to indicate that a crime (other that Kearl's own possession) had taken place—*i.e.*, that someone had possessed and delivered methamphetamine to her." The state relies on *dicta* in *Long et al.*, 113 Or at 312, in which the Supreme Court reasoned that independent evidence, had it been produced at

trial, that the accomplice witness in that case had possessed intoxicating liquor would have "sufficient[ly] corroborat[ed] * * * the fact that the crime of manufacturing intoxicating liquor had been committed by someone." The court also noted, however, that "such evidence would not necessarily have implicated the defendant in the commission of the crime." Like the accomplice's possession of intoxicating liquor in *Long*, Kearl's possession of drugs and drug paraphernalia "sufficient[ly] corroborat[es] * * * the fact that the crime[s] of [possession and delivery of methamphetamine] had been committed by someone" at some time. But that connection is insufficient to satisfy the requirement in ORS 136.440(1) that corroborating evidence "tend[ ] to connect * * * *defendant* with the commission of the offense." (Emphasis added.) The evidence that Kearl possessed drugs and drug paraphernalia fails to connect defendant with the commission of any crime, let alone the specific 14 drug deals about which Kearl testified.

■     The state did, however, produce nonaccomplice evidence corroborating the fact that Kearl and defendant had engaged in drug transactions that occurred before the controlled buy. The officers' testimony about Kearl's phone call to defendant to arrange the controlled buy—specifically, that defendant failed to indicate that the call was "out of the ordinary" and that neither he nor Kearl specified a meeting location—suggests that defendant "knew the routine" and thus corroborates Kearl's testimony that she had purchased methamphetamine from defendant before. We agree with the state that "[t]o establish that kind of pattern would require defendant and Kearl to [have] engage[d] in nearly identical conduct on multiple occasions." We also agree with the state that the controlled buy, which "went almost precisely how, in advance, [Kearl] had described it to police," corroborates the fact that earlier drug transactions had occurred.

More, however, is required. ORS 136.440(1) specifies that the corroborating evidence must tend to connect the defendant with the commission of *the* offense, "not just the commission of *an* offense." *State v. Foster*, 221 Or App 108, 113, 188 P3d 440 (2008) (emphasis in original). In *Foster*, police executed a search warrant at the defendant's apartment, where he lived with a roommate, Guy. They found

expensive clothing, two digital scales, neither containing drug residue, and a bag containing $6,000 in cash with a residual odor of drugs, which was detected by a dog trained in drug detection. *Id.* at 110. While police were conducting the search, Guy drove up in her car. Police searched the car and found cocaine packaged for sale. *Id.* at 111. They did not find drugs on the defendant, whom they searched after stopping him in a rental car. *Id.* at 110.

The defendant and Guy were charged jointly with possessing, delivering, and conspiring to deliver a controlled substance. Guy pleaded guilty, testifying that the defendant had asked her to pick up the cocaine for him but that she had not given the supplier any money for the drugs, nor was she aware of a connection between the money found at the apartment and the drugs. She also testified that she had never seen the defendant use the scales to weigh drugs. After the state rested, the defendant moved for a judgment of acquittal, contending that Guy was an accomplice and that the evidence other than her testimony was insufficient to link him to the charged crimes. *Id.* at 111. The trial court denied the motion. *Id.* at 111-12.

On appeal, the state argued that evidence that the defendant had engaged in drug transactions—that is, the cash, scales, and testimony from a police detective that drug dealers often use digital scales to weigh drugs, have large amounts of cash, and drive rental cars—was sufficient to corroborate Guy's testimony that the defendant had asked her to pick up the drugs for him. *Id.* at 112. We disagreed, holding that the evidence was insufficient to connect the defendant with the charged crimes:

"There was no evidence that the money, scales, or rental car were used in or obtained through the charged crimes such that defendant's possession of those items could connect him with the crimes. *Cf. State v. Boone*, 213 Or App [242,] 253[, 160 P3d 994, *adh'd to as modified on recons*, 215 Or App 428, 169 P3d 1274 (2007)] (concluding that the defendant's aiding and abetting in burglary was corroborated by his possession of items consistent with those stolen during the burglary). Guy knew of no connection between the money and the drugs and testified that no money changed hands when she picked up the drugs. Although the

drug-detecting dog alerted on the money, that evidence—at most—might tend to connect defendant to some drugs, not to the possession or delivery of or conspiracy to deliver the drugs found in Guy's car. * * *

"Nor can we find corroboration of the charged crimes in the evidence that drug dealers often have large amounts of cash, possess scales, and use rental cars. Although defendant possessed some items that drug dealers often possess, the mere possession of those items is insufficient to tend to connect defendant with the charged crimes. * * *

"Here, * * * defendant's possession of cash, scales, and a rental car—without more—is not a circumstance unlikely to have occurred unless he was engaging in possessing, delivering, or conspiring to deliver the cocaine found in Guy's car."

*Foster*, 221 Or App at 114-15. Accordingly, we concluded that the trial court had erred in denying defendant's motion for judgment of acquittal. *Id.* at 115.

By the same reasoning, the evidence of earlier drug transactions between Kearl and defendant fails to connect defendant with the specific instances about which Kearl testified and upon which the 28 charges against defendant were based. As in *Foster*, "that evidence—at most—might tend to connect defendant to some drug[ ] [activity]." *Id.* at 114. The evidence thus tends to connect defendant with "*an* offense," rather than with the specific offenses charged in this case, and is therefore insufficient to satisfy the corroboration requirement in ORS 136.440(1). *Foster*, 221 Or App at 113.

To corroborate the allegation that offenses not only occurred, but that specified offenses occurred on the days charged, the state relies on the evidence from Kearl's cell phone records, specifically, the phone calls that she identified as having been made to defendant on specified days. The prosecutor engaged Kearl in a series of separate dialogues, all of which followed a pattern similar to this:

"Q [by prosecutor]: I'm showing you page 59A [of the cell phone records], and do you recognize the phone number on that page?

"A [by Kearl]: Yes.

"Q: And do you recognize that phone number belonging to the defendant?

"A: Yes.

"Q: Did you make that phone call?

"A: Yes.

"Q: And with all of these phone numbers, you made all of these phone calls to the defendant?

"A: Yes.

"Q: What was the date in question on that?

"A: This one was September 11th.

"Q: And did you purchase methamphetamine from the defendant on that date?

"A: Yes."

In seven of these dialogues, the number that the prosecutor indicated was the one that Desmond had identified as the number that Kearl had used to arrange the controlled buy. In the remaining dialogues, the number was identified as belonging to defendant only by Kearl's testimony.

Clearly, the calls that were identified based solely on Kearl's testimony that the numbers used to make those calls belonged to defendant cannot independently corroborate conversations between Kearl and defendant. The only evidence linking Kearl and defendant on those occasions comes from Kearl, and she cannot corroborate herself. Thus, we readily conclude that no evidence corroborates Kearl's testimony that the transactions occurred on the days of those calls. Consequently, the court erred in not granting defendant's motion for a judgment of acquittal on the counts stemming from those alleged transactions.

The calls to numbers that were independently verified by Desmond as belonging to defendant present a closer question. The state argues that, combined with the corroborated evidence that Kearl had bought methamphetamine from defendant in the past, telephone conversations between the two of them on particular dates are sufficient to corroborate the fact that she had bought methamphetamine from

him on those dates. We are not persuaded, for several reasons.

■ First, there is no evidence that any conversations actually occurred—that Kearl did not reach defendant's voicemail or talk to another person. Second, even if a conversation occurred, there is no independent evidence that it had anything to do with drugs. Although Kearl testified that she and defendant never conversed about anything else, that testimony, again, is only self-corroboration. Third, even if conversations about buying drugs occurred, there is no independent evidence that they involved the kind of drug transactions for which defendant was convicted: possession of more than 10 grams of methamphetamine and delivery of more than 10 grams of methamphetamine for consideration while possessing $300 or more in cash. We understand that not every material fact necessary to establish a conviction must be corroborated, *Walton*, 311 Or at 243, and that circumstantial evidence can suffice. But the nonaccomplice evidence must corroborate *some* element of the crime; here it does not corroborate anything. And circumstantial evidence must be more than a chain of inferences; here it is not. Defendant was convicted of Counts 2 through 15 and 17 through 30 on the basis of uncorroborated accomplice testimony, and those convictions must be reversed.

Defendant, as noted, was charged with, and convicted of, 28 counts stemming from 14 alleged transactions in addition to the controlled buy. The parties in their briefs agree that the issue regarding accomplice testimony implicates those 14 transactions. However, Kearl's cell phone records and the testimony that the prosecutor elicited from Kearl concerning her meetings with defendant indicate that only 12 meetings occurred. Thus, it appears that, for four counts stemming from two meetings, the state produced *no* evidence—not even accomplice testimony. We need not resolve this discrepancy, however, because the disposition of those four counts would be the same regardless of whether they relied on only accomplice testimony or whether there was no evidence to support them.

Counts 2 through 15, and 17 through 30, reversed; remanded for resentencing; otherwise affirmed.