1

Argued and submitted November 20, 2018; convictions on Counts 8, 11, 14, and 17 vacated and remanded, otherwise affirmed February 3, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

A. J. SCOTT NELSON,
*Defendant-Appellant.*

Lane County Circuit Court
201216841; A162860

481 P3d 314

Taylor, Crabtree, and defendant had plans to rob the Siuslaw Bank in Mapleton, but their car broke down. To get a working car, they kidnapped a man they did not know and killed him. Then they dismembered his body and, the next day, used his car to get to the bank to rob it. For that conduct, a jury found defendant guilty of murder, aggravated murder, kidnapping, abuse of a corpse, and multiple counts of first- and second-degree robbery. Defendant appeals. He assigns error to, among other things, the trial court's acceptance of nonunanimous guilty verdicts on Counts 8, 11, 14, and 17, and the court's jury instruction that Crabtree's accomplice-witness testimony should be viewed with distrust. Defendant argues that the accomplice-witness instruction should not be delivered for the purpose of assisting the state in casting doubt on accomplice testimony that is favorable to the defendant. *Held*: The trial court erred in accepting the nonunanimous guilty verdicts and in issuing the accomplice-witness instruction. That instruction was in error because it was delivered for the purpose of assisting the state to discredit accomplice testimony favorable to the defense. *See State v. Simson*, 308 Or 102, 108, 110 & n 11, 775 P2d 837 (1989). However, that instructional error was harmless because, when viewed in the context of the whole record, there is little likelihood it affected the jury's verdict.

Convictions on Counts 8, 11, 14, and 17 vacated and remanded; otherwise affirmed.

Debra K. Vogt, Judge.

Daniel J. Casey argued the cause for appellant. Also on the briefs was Bryan Boender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Convictions on Counts 8, 11, 14, and 17 vacated and remanded; otherwise affirmed.

## LAGESEN, P. J.

David Taylor, Mercedes Crabtree, and defendant had plans to rob the Siuslaw Bank in Mapleton, but their car broke down. To get a working car, they kidnapped a man they did not know and killed him. Then they dismembered his body and, the next day, used his car to get to the bank to rob it.

For that conduct, a jury found defendant guilty of murder, aggravated murder, kidnapping, abuse of a corpse, and multiple counts of first- and second-degree robbery. Although the state sought the death penalty, the jury rejected it. The jury also rejected the proposition that there were mitigating circumstances sufficient to make defendant eligible for release or parole. As a result, defendant was sentenced to life without possibility of parole.

On appeal, defendant initially raised 10 assignments of error, some of which challenge the trial court's ruling with respect to the guilt phase, some of which challenge its rulings with respect to the penalty phase. Following the Supreme Court's decision in *Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020), defendant, with this court's permission, filed a supplemental brief in which he contends that, (1) as to his nonhomicide convictions, the court's instruction to the jury that it could return nonunanimous verdicts is structural error that requires reversal of all of those convictions; and (2) in all events, the court erred in accepting the guilty verdicts on Counts 8, 11, 14, and 17, because each of those verdicts was nonunanimous.[1]

We conclude that, under *Ramos* and *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020), defendant is entitled to vacation of his convictions on Counts 8, 11, 14, and 17. We otherwise decide that defendant's claims of error do not warrant relief on appeal, writing only to discuss his first assignment of error, in which he contends that the trial court erred when, on the state's request over defendant's objection, the trial court instructed the jury that "Crabtree

---

[1] Because Article I, section 11, of the Oregon Constitution required jury unanimity on defendant's murder convictions, they are not affected by the decision in *Ramos*.

is an accomplice witness" and "[t]he testimony of an accomplice witness should be viewed with distrust." We conclude that the court erred by delivering that instruction, but that the error was harmless, and consequently reject defendant's challenges to the balance of his convictions.

The Supreme Court's decision in Taylor's direct appeal describes in greater detail the nature of defendant's "horrific crimes." *State v. Taylor*, 364 Or 364, 368-70 & n 2, 434 P3d 331, *cert den*, ___ US ___, 140 S Ct 505 (2019). Although Taylor and defendant were tried separately, and Crabtree pleaded guilty, the Supreme Court's description in *Taylor* of the facts of the crimes committed by the three of them is borne out by the record in this case, so we do not recount them again here, except as necessary to give context.

Crabtree was a key witness for both the state and defendant; neither Taylor nor defendant testified, although their recorded police interviews were admitted into evidence. At the state's request, and over defendant's objection, the court delivered Uniform Criminal Jury Instructions (UCrJI) 1054 and 1057, which, together, told the jury that Crabtree was an accomplice witness and, further, that "[t]he testimony of an accomplice witness should be viewed with distrust." Defendant objected below, arguing that the jury should not be instructed that it could view Crabtree's testimony with distrust, that the state should not be entitled to use the instruction with a witness that it had called itself, and that "that is an instruction that should be requested by a party who—who is being opposed by the accomplice witness." In response, the state contended that it was entitled to the instruction because of its own need to impeach Crabtree: "As to [UCrJI] 1054, we are asking for this. Ms. Crabtree was called. We were in a position, of course, to have to impeach her. We think that and [UCrJI] 1057 are appropriate under the circumstances." After the court ruled that it would deliver the instruction, defendant reiterated his earlier objection, arguing that the instruction "shouldn't be given in this case" to address "a State's witness that they called."

On appeal, defendant assigns as error the delivery of those instructions. Although defendant does not dispute

that Crabtree qualified as an accomplice for purposes of the instruction, he argues that the purpose of the instruction is to counteract the likelihood that an accomplice witness will tend to inculpate a defendant to obtain some benefit for themselves and, for that reason, should not be delivered over a defendant's objection when some or all of the testimony is favorable to defendant. In support of that argument, defendant relies on the Supreme Court's decisions in *State v. Oatney*, 335 Or 276, 283, 66 P3d 475 (2003), *cert den*, 540 US 1151 (2004), and *State v. Simson*, 308 Or 102, 104, 110 n 10, 775 P2d 837 (1989), and our decision in *State v. Rambert*, 216 Or App 39, 44, 171 P3d 398 (2007), all of which recognized, to one degree or another, that the concerns addressed by the instruction generally are not present when an accomplice witness testifies favorably to the defense.

The state, in response, contends that defendant did not preserve the argument he presses on appeal but, instead, "took only an absolutist position that such instructions cannot be given over the defendant's objection when the witness was called by the state." The state, also relying on *Oatney*, argues further that the trial court correctly overruled defendant's objection to the instruction because Crabtree's testimony was both inculpatory and exculpatory. In the state's view, *Oatney* stands for the proposition that a trial court permissibly instructs the jury that an accomplice witness's testimony should be viewed with distrust so long as some part of the testimony inculpates the defendant, even where, as here, the defendant does not seek the assistance of the instruction. The state also contends that *Oatney* disposes of defendant's contention that a trial court errs as a matter of law by instructing the jury that an accomplice's testimony should be viewed with distrust whenever a defendant objects to the instruction. That is because, in that case, the defendant had objected to the instruction, but the Supreme Court nonetheless rejected the defendant's claim that it was error to deliver the instruction.

As an initial matter, we reject the state's contention that defendant's assignment of error is not preserved. Although defendant did not present his arguments below with the greatest of clarity, when those arguments are viewed in the context of the state's argument as to why

the instruction was warranted, we understand defendant's arguments to have raised and preserved the general point he presses on appeal: whether it is proper to deliver the instruction for the purpose of allowing the state to impeach the testimony of a witness it has called that is favorable to the defense. The state's position below was that it was entitled to impeach Crabtree based on her status as an accomplice; defendant's position was that it was not. The issue is preserved.

The instruction at issue here—that an accomplice's testimony ought to be viewed with distrust—is a member of a set of jury instructions known as "statutory instructions." *See State v. Payne*, 366 Or 588, 595-96, 468 P3d 445 (2020). That is because it is among eight jury instructions contained in a statute, ORS 10.095, that directs trial courts to deliver the instructions within the set "on all proper occasions." Pertinent to this case, ORS 10.095(4) requires that, "on all proper occasions," the jury is "to be instructed" that "the testimony of an accomplice ought to be viewed with distrust."

Whether an occasion is a "proper" one for the delivery of one of the statutory instructions presents a question of law, so we review the trial court's decision for legal error. *State v. Langley*, 331 Or 430, 452, 16 P3d 489 (2000); *see Payne*, 366 Or at 603-07 (discussing the appropriate standard of review applicable to trial court decision whether to deliver a statutory instruction). "In general, it is proper to give a statutory instruction under ORS 10.095 when the evidence provides a basis for it." *Rambert*, 216 Or App at 42.

The parties have correctly identified the three cases that inform the analysis of when is a "proper" occasion to instruct the jury that the testimony of an accomplice should be viewed with distrust: the Supreme Court's decisions in *Simson* and *Oatney*, and our decision in *Rambert*.

In *Simson*, the defendant objected to the trial court instructing the jury that accomplice witness testimony should be viewed with distrust where the testimony of his accomplices, who had been called as witnesses by the state, did not implicate him. 308 Or at 105. On appeal, we reversed. The Supreme Court affirmed our decision, adopting the

reasoning of a special concurrence by Presiding Judge Buttler. *Id*. at 108. Noting that "the concurrence would hold that the accomplice instructions are designed to protect defendants, not the state," the court elaborated that the purpose of the instructions addressing accomplice testimony, including the instruction at issue here, is to address the concern that "criminals may falsely accuse others of their misdeeds in order to minimize their own culpability. This concern is not present when the alleged accomplices are not, in fact, trying to shift blame." *Id*. at 108-10. Under those circumstances, the court reasoned, the delivery of the instruction can amount to a judicial assist to the state:

> "Some courts have focused on the inherent unreliability of anyone involved in the crime at issue as the basis for distrusting accomplice testimony. However, participation in the crime is of special concern only insofar as it gives a witness a motive to shift blame to someone else. In cases in which the opposite occurs, *i.e.*, a party already facing long imprisonment gives testimony *exculpating* a defendant on trial, the witness's unreliability may be developed sufficiently by cross-examination for bias. The state does not need instructional help other than the standard instruction on bias."

*Id*. at 110 n 11 (emphasis in original).

In *Oatney*, the defendant likewise objected to the trial court's instructions regarding accomplice witness testimony, including the instruction that an accomplice witness's testimony should be viewed with distrust. 335 Or at 280-81. Defendant contended that the instructions, as a whole, effectively directed a verdict for the state and improperly communicated to the jury that a crime had, in fact, been committed, depriving him of his right to a jury trial. *Id*. at 281-82. In support of those contentions, the defendant relied on *Simson*. *Id*. at 282. And in rejecting those contentions, the court observed that the facts of the defendant's case differed from those in *Simson* in that, in the defendant's case, the testimony at issue implicated the defendant whereas, in *Simson*, it did not. *Id*. at 286-87.

Finally, in *Rambert*, we considered whether the trial court erred in instructing the jury that accomplice witness

testimony should be viewed with distrust where it was the defendant who had called the accomplice—his girlfriend—to testify that he had acted in self-defense in committing assault with a firearm. 216 Or App at 41-42. The trial court did so at the state's request and over the defendant's objection. *Id*. at 42. After reviewing *Simson* and *Oatney*, we observed that "*Simson* and *Oatney* are consistent with the understanding that the proper occasion for giving a statutory instruction under ORS 10.095(4) is when the thrust of the accomplice testimony *implicates* the defendant in criminal conduct." *Id*. at 44 (emphasis in original). We then concluded that "[t]he circumstances of this case are more like what occurred in *Simson*" because "defendant did not seek to cast doubt on [the accomplice's] testimony; rather, he offered her testimony to support his defense that he acted in self-defense." *Id*. Under those circumstances, we reasoned, "the accomplice-witness instruction could have served only to cast doubt on the veracity of a witness whose testimony was mostly exculpatory in nature." *Id*. at 45.

Although the rule of law emanating from those three cases is somewhat foggy, as we read *Simson* and *Rambert*, the "proper occasion" for instructing the jury that an accomplice's testimony should be viewed with distrust is when the thrust of the testimony implicates the defendant in a way that allows for an inference of blame-shifting, *and* when the instruction is requested for the purpose of addressing that blame-shifting inference.

We acknowledge that *Oatney* can be read to suggest that the instruction is proper any time that an accomplice gives inculpatory testimony. That reading, however, would put the decision at odds with *Simson*'s clear statement that the concerns addressed by the instruction are not present when the testimony of accomplice witnesses does not shift blame. *Simson*, 308 Or at 110. Also, *Oatney* does not squarely address the issue presented in *Simson*, *Rambert*, and the present case: the propriety of delivering the ORS 10.095(4) instruction for the purpose of assisting the state in casting doubt on accomplice testimony that is favorable to the defendant. *Oatney*, as noted, addressed whether delivering the set of accomplice instructions functionally directed a verdict for

the state on the issue of whether a crime had been committed. On the point at issue in this case, and not truly at issue in *Oatney*, we understand *Simson*, and its approval of Presiding Judge Buttler's special concurrence, to hold that it is not proper to deliver the instruction for the purpose of assisting the state to discredit accomplice testimony favorable to the defense. *Simson*, 308 Or at 108, 110 & n 11.

Here, the state's articulated purpose for requesting the instruction, and the evidentiary basis that the state pointed to, was *its* need to impeach Crabtree's testimony that it viewed as favorable to defendant. Under *Simson* and *Rambert*, that was not a "proper" basis for giving the statutory instruction, and the trial court erred by delivering the instruction at the state's request for the purpose of assisting it in impeaching testimony beneficial to defendant.

That error, nevertheless, was harmless. Instructional error is harmless if there is little likelihood that it affected the jury's verdict. *Payne*, 366 Or at 609. In assessing whether instructional error is harmless, we "consider[] the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2015).

Here, although the state requested the instruction for the purpose of impeaching Crabtree, it never argued to the jury that it should discredit any of her testimony because of her accomplice status (perhaps because she was the state's primary witness). Instead, to the extent needed to, the state attempted to discredit Crabtree's testimony based on her "intimate" and long-term friendship with him. Additionally, unlike the case in *Simson* and *Rambert*, Crabtree's testimony was highly inculpatory. To be sure, she painted Taylor as a leader and defendant as a follower but did not in any real sense exculpate defendant. (In fact, if defendant had requested the instruction for the purpose of undercutting Crabtree's inculpatory testimony, it may well have been error not to deliver it. Although Crabtree's description of events tended to align with defendant's recorded admissions, it would not be a stretch to infer that she was shifting blame.) Finally, the jury was presented with no clear

theory as to why some, but not all, of Crabtree's testimony should be distrusted based on her status as an accomplice. As noted, the only coherent theory presented to the jury as to why her testimony favorable to defendant should be viewed with skepticism was that she loved him. Under those circumstances, it is likely that the jury based its assessment of Crabtree's credibility on the nature of her relationship to defendant, and unlikely that it did so based on her accomplice status. Accordingly, although the trial court erred in delivering the instruction, the error is not a reversible one.

We turn to defendant's arguments regarding jury unanimity. Defendant contends that, in light of *Ramos*, the trial court plainly erred in accepting nonunanimous verdicts on Counts 8, 11, 14, and 17. The state agrees that the court plainly erred, but contends that the error is harmless because each of those guilty verdicts merged with a different guilty verdict for entry of a single conviction based on at least one unanimous verdict. Nevertheless, as the state acknowledges, that harmlessness argument conflicts somewhat with *State v. Link*, 346 Or 187, 200, 208 P3d 936 (2009), which held that a defendant is entitled to have a final judgment accurately reflect only the valid adjudications of guilt. We agree with that acknowledgement and otherwise exercise our discretion to correct this error that represents a violation of defendant's federal constitutional rights. As the state proposes, a proper remedy, given the merger issue, is to "remand this case to the trial court to vacate the guilty verdicts that were not unanimous and then to enter an amended judgment that reflects *** no valid verdict on those counts."

Defendant also argues that merely instructing the jury that it could return nonunanimous verdicts amounts to structural error that requires the reversal of convictions, including those based on unanimous verdicts. That argument is foreclosed by *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020), and *State v. Kincheloe*, 367 Or 335, 338-39, 478 P3d 507 (2020).

As noted, we have considered all of defendant's other assignments of error and reject them without further written discussion.

Convictions on Counts 8, 11, 14, and 17 vacated and remanded; otherwise affirmed.